[L. A. No. 23362.   In Bank.   Oct. 21, 1955.]

F. LOHR BAUER et al., Appellants, v. COUNTY OF
VENTURA et al., Respondents.

William T. Selby and Glenn C. Garman for Appellants.

Roy A. Gustafson, District Attorney, Bruce A. Thompson, Deputy District Attorney, and Harry E. Sackett for Respondents.

SHENK, J.—This is an appeal from a judgment of dismissal in an action to recover damages resulting from the alleged wrongful inundation of the property of the plaintiffs, Mr. and Mrs. Bauer. They own real property located in the vicinity of a watercourse and storm drainage system controlled by the defendants in Ventura County. On March 15, 1952, the waters contained in the defendants' storm drain ditch overflowed upon and damaged plaintiffs' land. Principally upon the theories of inverse condemnation and the tort liability of the defendants, the plaintiffs commenced this action to recover the resulting damages.

The trial court's judgment of dismissal was based upon its orders sustaining demurrers of each defendant to the amended complaint. General and special demurrers of the county were sustained with leave to amend within 10 days. The plaintiffs having failed to amend within that time, the action was dismissed as against the county. General demurrers of the Saticoy Storm Drain Maintenance District and the individual members of the county board of supervisors were sustained without leave to amend.

The plaintiffs allege that in 1939 the county and district built a system of ditches and levees diverting the waters of the Franklin Barranca, a natural watercourse, away from their natural stream. In its natural course the stream flowed in a direction away from the plaintiffs' land at an approximate distance of one quarter of a mile. The plaintiffs' land and the intervening tract between it and the barranca sloped downward. Because the barranca in its natural state was lower than the plaintiffs' land, the natural overflow, if any, would flow away from and never toward the plaintiffs' land. This was also the case with the ditches. Since, from the viewpoint of the plaintiffs' tract, the far side of the ditch was lower than the level of the plaintiffs' land, any overflow from the ditch would flow downward and away. Then, from 1950 to March 15, 1952, the lower bank at the far side of the ditch was raised by the defendants who placed thereon a quantity of debris and soil which had accumulated in the bottom of the ditch. A pipe was placed across the ditch

in such a way that the water flow was obstructed. With the lower bank of the ditch thus raised, its highest points were above the level of the plaintiffs' land. No bank or levee was constructed upon the bank nearest the plaintiffs which would keep the waters in the ditch or continue to permit them to overflow only in a direction away from the plaintiffs' land.

The complaint alleges that as the proximate result of this dangerous and defective condition, the negligent construction, the maintenance and condition of the ditch, the obstructions therein and the acts of the defendants in constructing the ditch, banks and levees, water overflowed onto and damaged plaintiffs' property. Plaintiffs' claim filed with the county was denied. They have received no compensation for the taking and damaging of their property for such public use. They further allege that the work described was done by and under the control of the defendants county and district, and from 1950 to 1952 the work was at all times under the direct supervision of the defendant members of the board of supervisors.

The plaintiffs contend that these allegations, assumed to be true for the purpose of considering the demurrers, state a cause of action.

California Constitution, article I, section 14, provides: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner. . . ." ■ The taking of private property by the state for a public use is universally recognized as one of the indisputable attributes of sovereignty. (*Moran* v. *Ross*, 79 Cal. 159 [21 P. 547]; *Gilmer* v. *Lime Point,* 18 Cal. 229.) ■ But the state must, except under special circumstances not here present, follow the constitutional procedure which requires the payment of compensation before the private owner is dispossessed of his property. ■ When this requirement is not fully satisfied, an action will lie against the state to recover the value of the property so taken. (*Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818]; *Rose* v. *State,* 19 Cal.2d 713 [123 P.2d 505].) Based upon section 14, the appropriate action is sometimes designated a proceeding in inverse condemnation.

■ Section 14, however, is designed not to create new causes of action but only to give the private property owner a remedy he would not otherwise have against the state for the unlawful dispossession, destruction or damage of his property. The state is therefore not liable under this

provision for property damage that is *damnum absque injuria.*
If the property owner would have no cause of action
against a private citizen on the same facts, he can have no
claim for compensation against the state under section 14.
(*Clement* v. *State Reclamation Board,* 35 Cal.2d 628 [220
P.2d 897] ; *House* v. *Los Angeles County Flood Control Dist.,*
25 Cal.2d 384 [153 P.2d 950] ; *Archer* v. *City of Los Angeles,*
19 Cal.2d 19 [119 P.2d 1] ; *San Gabriel Valley Country Club*
v. *County of Los Angeles,* 182 Cal. 392 [188 P. 554, 9 A.L.R.
1200] ; *Lamb* v. *Reclamation Dist. No. 108,* 73 Cal. 125 [14
P. 625, 2 Am.St.Rep. 775].) The effect of section 14
is to waive the immunity of the state where property is taken
or damaged for public purposes. To bring his complaint
within the provision, the plaintiff must show not only
a taking or damaging for a public use but also that it is
actionable under the general law.

It is well established that the diversion of water from
its natural course resulting in damage to adjacent property
is actionable. (*Clement* v. *State Reclamation Board, supra,*
35 Cal.2d 628; *House* v. *Los Angeles County Flood Control
Dist., supra,* 25 Cal.2d 384; *Pacific Seaside Home for Children*
v. *Newport Protection Dist.,* 190 Cal. 544 [213 P. 967] ;
*Elliott* v. *County of Los Angeles,* 183 Cal. 472 [191 P. 899] ;
*Smith* v. *City of Los Angeles,* 66 Cal.App.2d 562 [153 P.2d
69] ; see *Powers Farms, Inc.* v. *Consolidated Irr. Dist.,* 19
Cal.2d 123 [119 P.2d 717] ; *Massetti* v. *Madera Canal & Irr.
Co.,* 20 Cal.App.2d 708 [68 P.2d 260] ; *Tormey* v. *Anderson-
Cottonwood Irr. Dist.,* 53 Cal.App. 559 [200 P. 814].)
Mere improvement within an existing watercourse
which accelerates rather than diverts the flow does not give
rise to a cause of action when damage results from an over-
flow. Straightening, widening or deepening the chan-
nel of a stream to improve the drainage or the collection
of surface waters for discharge into their natural stream
entails no diversion in the event of a resulting overflow.
But to escape liability the improvements thus described
must follow the natural drainage of the country or the natural
stream. (*Archer* v. *City of Los Angeles, supra*; *San Gabriel
Valley Country Club* v. *County of Los Angeles, supra.*) In
the present case, the plaintiffs' allegations show that the
waters of the barranca were diverted away from their natural
stream into a ditch running close to the plaintiffs' land, and
then permitted to overflow and back up in a direction exactly
opposite from their natural flow.

The defendants contend that the damage resulting from negligent maintenance rather than the original construction of a public improvement is beyond the scope of protection offered by section 14. They point to the plaintiffs' allegations that the county and district negligently and carelessly permitted the bank of the ditch to be raised on the far side, permitted obstructions to be placed in the ditch, and allowed debris and stumps to collect and be placed therein. This, it is argued, is negligent maintenance and a consequential property loss is not an express taking or damaging for a public use.

██ "Public use" within the meaning of section 14 is defined as a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government. (*Gilmer* v. *Lime Point, supra,* 18 Cal. 229.) ██ To make a use public in character, a duty must fall on the person or corporation holding the property appropriated by eminent domain to furnish the public with the use intended and the public must be entitled to use or enjoy the property taken. (*Gravelly Ford Canal Co.* v. *Pope & Talbot Land Co.,* 36 Cal.App. 556 [178 P. 150]; see *Thayer* v. *California Dev. Co.,* 164 Cal. 117 [128 P. 21].) ██ Hence it is clear that the ordinary taking of private property for the purpose of constructing storm drainage systems is a taking for a public use. The reasons for such a taking are obviously to provide adequate normal drainage, to control flood waters and to provide irrigation waters. The public becomes principally entitled to the use and enjoyment of the private property taken for such purposes.

. The drainage system in the present case was constructed pursuant to the Storm Drain Maintenance District Act (Stats. 1937, ch. 265, p. 566, amended by Stats. 1949, ch. 496, p. 854; Stats. 1953, ch. 546, § 1, p. 1805; Water Code, Uncodified Acts, Act 2208, p. 179) which enables county boards of supervisors to create and govern a storm drainage maintenance district whenever the maintenance of storm drainage improvements or other watercourses or drainage channels within a territory is not otherwise provided for by law. The act provides that ". . . Such maintenance may include any or all of the following work: the cleaning, repairing, renewal, replacement, widening or straightening of existing storm drain structures, watercourses or drainage channels, and the installation of appurtenant structures when necessary for the adequate functioning of such drainage facilities. Said District may also construct additional storm drain channels or struc-

tures and maintain the same whenever necessary to provide proper and adequate drainage of the surface waters of the district." (Storm Drain Maintenance District Act, *supra*, art. 1.) The proper maintenance of existing drainage systems thus became a matter of public policy and the subject of an independent statute.

The consequences of faulty maintenance may assume public importance equal in some instances to the original construction. The ultimate objects of construction and maintenance are similar if not coextensive. In some instances, where the original construction artificially diverts a stream from its natural course, more risk of damage to surrounding property may be created from improper maintenance than would exist had the stream been permitted to remain in its natural state. If the original construction had as its function the expeditious drainage of surface waters, then that public purpose is served equally by the proper maintenance of the improvement once it is made. ▐ It follows that the taking or damaging of private property for the maintenance of an existing public improvement involving a deliberate act which has as its object the direct or indirect accomplishment of the purpose of the improvement as a whole constitutes a taking or damaging of property for a public use and the owner of such property is entitled to compensation.

▐ The precise purpose of the defendants' raising the bank on the far side of the ditch is not made clear in the complaint. But it falls within that category of drainage maintenance described in the statute. The rather obscure line between the concepts of "construction" and "maintenance" is disclosed by any attempt to define them in mutually exclusive terms and to characterize the raising of a bank of an existing ditch as one or the other. If the "maintenance" consists of an alteration of the ditch by raising one of the banks, then in a material sense "maintenance" becomes a species of "construction." Had the bank been raised during the original construction it would have been part of the over-all project and hence within the rule of *Clement* v. *State Reclamation Board, supra,* 35 Cal.2d 628 and *House* v. *Los Angeles County Flood Control Dist., supra,* 25 Cal.2d 384. The defendants' argument that damage from maintenance is beyond the purview of section 14 invites an artificial distinction which would turn simply upon the passage of time between the original construction and the subsequent alteration and must therefore be rejected.

██ Nor does this application of section 14 subject the state to general tort liability under the theory of eminent domain. The defendants contend that the imposition of a duty to compensate for improper maintenance of a public improvement would impose liability for the act of negligently forgetting to close a sluice gate or other negligent acts committed during the routine day to day operation of the public improvement. But the raising of a ditch bank appears on its face to be a deliberate act carrying with it the purpose of fulfilling one or another of the public objects of the project as a whole. Here the raising of the bank is not an accident or an act in itself resulting from carelessness. It is deliberate. The damage to property in this instance resulted not from immediate carelessness but from a failure to appreciate the probability that, functioning as deliberately conceived, the public improvement as altered and maintained would result in some damage to private property. ██ Damage resulting from negligence in the routine operation having no relation to the function of the project as conceived is not within the scope of the rule applied in the present case. (See *Miller* v. *City of Palo Alto*, 208 Cal. 74 [280 P. 108] ; *McNeil* v. *City of Montague*, 124 Cal.App.2d 326 [268 P.2d 497] ; *Western Assurance Co.* v. *Sacramento & S. J. Drainage Dist.*, 72 Cal.App. 68 [237 P. 59] ; anno. 2 A.L.R.2d 677.)

██ The plaintiffs, as stated, also allege that the collection of debris and stumps in the ditch raised an obstruction which caused the water to back up on their land. If this was due to the mere negligent operation of the ditch system, it is not within the scope of liability as a taking or damaging for a public use under section 14. If, on the other hand, the obstruction of the ditch was in some way part of the plan of maintenance or construction, then liability would attach because the means of carrying out the plan of construction and maintenance are immaterial. (See *Powers Farms, Inc.* v. *Consolidated Irr. Dist.*, 19 Cal.2d 123 [119 P.2d 717] ; *Commonwealth* v. *Kelley*, 314 Ky. 581 [236 S.W. 2d 695] ; *Letcher County* v. *Hogg*, 209 Ky. 182 [272 S.W. 423] ; *Stith* v. *Louisville & N. R. Co.*, 109 Ky. 168 [58 S.W. 600].) ██ The allegations in the complaint in the present case make the plaintiffs' theory clear. They allege that the collection of debris and stumps was part of the construction and that the taking was for a public use. The presence of debris and stumps was therefore properly characterized to bring it within the scope of section 14. This analysis would

also apply to plaintiffs' allegation that a pipe placed across the ditch similarly obstructed the flow of water. It follows that the demurrers should not have been sustained on the ground that the complaint fails to state a cause of action under section 14.

Plaintiffs next contend that the complaint states a cause of action in tort, independent of the eminent domain theory, as against the defendant county. Section 53051 of the Government Code waives the immunity of the county from suit in the following terms: "A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition: (a) Had knowledge or notice of the defective or dangerous condition. (b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition." Complying with these requirements, the complaint alleges, as indicated that on March 15, 1952, the ditch was constructed and maintained in a dangerous and defective condition; that as the proximate result thereof plaintiffs' property was damaged; that each of the defendants had knowledge thereof and failed to remedy said condition within a reasonable time after such knowledge. These are sufficient allegations to state a cause of action under Government Code, section 53051. (See *Silva* v. *County of Fresno*, 63 Cal.App.2d 253 [146 P.2d 520].)

The defendant county asserts that the complaint is defective for not alleging that the property claimed to be kept in a dangerous and defective condition is property owned by the county. There is no merit in this contention for it ignores the definition of the language of section 53051 found in the code itself. Section 53050 defines "public property" as meaning ". . . public street, highway, building, park, grounds, works, or property." The drainage system and ditch involved in this case are clearly "public works" and therefore "public property" within the meaning of the code. (*Young* v. *County of Ventura*, 39 Cal.App.2d 732 [104 P.2d 102].) Hence the complaint states a cause of action against the county under Government Code, section 53051.

The defendant district contends that the trial court's order sustaining its demurrer was proper because the district's immunity from suit as a state instrumentality has not been waived under section 53051. The district argues

that that section waives immunity only with respect to "local agencies" which are defined in section 53050 to include ". . . city, county or school district," and the Storm Drain Maintenance District is not such a local agency. This argument, however, rests upon the incorrect assumption that the district is a governmental agency separate and distinct from the county.

A reading of the Storm Drain Maintenance District Act supports the conclusion that the district is a unit created for purposes of taxes and administration. The operational powers of the district are vested in the county board of supervisors and other county officers. The board creates and governs the district (§ 1), and has power to enter into contracts for the district, make rules and regulations and do all things necessary to accomplish the purposes of the act (§ 5). The board of supervisors is given power to acquire and dispose of property for the district but only in the name of the county (§ 5). Taxes are levied by the board of supervisors but they must be levied and collected at the same time and manner as general county taxes; and when collected are paid into the county treasury to the credit of the district and may be used only for district purposes (§ 7). ■■■ Storm drain maintenance districts created pursuant to the act are not given the power to sue and be sued; nor are they created as independent public corporations.

In other acts dealing with water control problems the Legislature made clear provision for the creation of state instrumentalities with separate legal personalities. (See acts collected in 1 Water Code, Uncodified Acts.) The Ventura County Flood Control Act (1 Water Code, Uncodified Acts, No. 8955, p. 899 et seq.), for example, provides that the "Ventura County Flood Control District is hereby declared to be a body corporate and politic," and the district's powers include: perpetual succession, the power to sue and be sued, to take title to real and personal property, to incur indebtedness and issue bonds, to levy taxes, to make contracts and to employ labor (§ 7). The Storm Drain Maintenance District Act, on the other hand, vests the defendant district's much less extensive powers in the county board of supervisors rather than in the district itself. Neither the legislative intention nor the stated purposes of the Storm Drain Maintenance District Act requires the districts created pursuant thereto to enjoy a legal personality separate from the county. (See *Anaheim Sugar Co.* v. *County of Orange,* 181 Cal. 212

[183 P. 809] ; *Mortimer* v. *Acquisition & Imp. Dist. No. 36,* 105 Cal.App.2d 298 [233 P.2d 113] ; *Mortimer* v. *Acquisition & Imp. Dist. No. 36,* 79 Cal.App.2d 404 [180 P.2d 355].)

▮ It therefore seems clear that the Saticoy Storm Drain Maintenance District was improperly joined as a party defendant.

As against the individual members of the board of supervisors, it appears from the allegations of the complaint that in 1939 the system of ditches and levees designed to divert the waters of the Franklin Barranca in a southwesterly direction was wholly under the control of the county of Ventura and the Saticoy Storm Drain Maintenance District; that in "the doing of said work the direction and control thereof was at all times in the years 1950, 1951, and 1952 under the direct supervision of the defendants," the individual members of the board of supervisors, naming them; that in March, 1952 the drainage ditch "was constructed and maintained in a dangerous and defective condition. That the Board of Supervisors of the County of Ventura and each of the members thereof and each and all of the defendants failed and neglected to remedy said condition within a reasonable time after such notice or knowledge."

▮ The plaintiffs concede that there is no liability as against the individual members of the board under the law of eminent domain. Nor is there any allegation that the individual members of the board exceeded their authority under the Storm Drain Maintenance District Act. Hence the only appropriate theory under which the plaintiffs could proceed against the board members personally was in accordance with the provisions of Government Code, section 1953. That section provides: "No officer of the State or of any district, county, or city is liable for any damage or injury to any person or property resulting from the defective or dangerous condition of any public property, unless all of the following first appear: (a) The injury sustained was the direct and proximate result of such defective or dangerous condition. (b) The officer had notice of such defective or dangerous condition or such defective or dangerous condition was directly attributable to work done by him, or under his direction, in a negligent, careless or unworkmanlike manner. (c) He had authority and it was his duty to remedy such condition at the expense of the State or of a political subdivision thereof and that funds for that purpose were immediately available

to him.' (d) Within a reasonable time after receiving such notice and being able to. remedy such condition, he failed to do so, or failed to take reasonable steps to give adequate warning of such condition. (e) The damage or injury was sustained while such public property was being carefully used, and due care was being exercised to avoid the danger due to such condition.''

It may be assumed that the complaint alleges facts which are sufficient to put in issue the requirements enumerated in subdivisions (a) and (b). But it is not alleged in accordance with subdivision (c) that the supervisors individually had the authority and the duty to remedy the condition at the expense of the county and that funds for that purpose were immediately available to them individually. All that the plaintiffs allege in accordance with subdivision (d) is that the defendants "failed and neglected to remedy said condition within a reasonable time after such notice or knowledge.'' It is not alleged in accordance with that subdivision that the defendants were able to remedy the defective or dangerous condition or that they failed, as an alternative to remedying the condition, to take reasonable steps to give adequate warning of such condition. Nor is it alleged in accordance with subdivision (e) that the plaintiffs were exercising due care to avoid the damage to their property resulting from the defective or dangerous condition. The plaintiffs contend that allegations in accordance with subdivisions (c), (d) and (e) are unnecessary because the present case involves an injury arising out of construction and maintenance of the public improvement under the direct supervision of the board. They argue that the requirements of those subdivisions must be alleged only where the injury arises out of a defective or dangerous condition due to the negligence of persons not under the defendants' supervision or from accidental or natural causes existing subsequent to the original construction or maintenance, citing *Moore* v. *Burton*, 75 Cal.App. 395 [242 P. 902]. But there is no language in the statute which supports that construction. Section 1953 provides that no liability shall attach unless "all" of the enumerated conditions are shown to exist. The requirements of the individual defendant officers' authority and duty under the law to remedy the defective or dangerous condition, the availability of funds in their hands individually for that purpose, their ability to remedy the condition and failure to do so within a reasonable time or to give adequate

warning, and the plaintiffs' exercise of due care in the premises are all material allegations. Anything inferred to the contrary from *Moore* v. *Burton*, 75 Cal.App. 395 [242 P. 902], is disapproved  Having failed to allege fully the matters contained in subdivisions (c), (d) and (e), the plaintiffs have not stated a cause of action against the individual members of the board.

Nor have the plaintiffs shown that the trial court abused its discretion in sustaining the individual board members' demurrer without leave to amend. It does not appear that the plaintiffs could allege the substance of subdivision (c) of section 1953 even if they were given another opportunity to amend their complaint, because no board member. acting individually, has the duty and authority to remedy a defective or dangerous condition at the county's expense. The Storm Drain Maintenance District Act, which authorized the county to undertake the improvement work involved in the present case, empowers only the county board of supervisors acting as a body to carry out the improvement and maintenance purposes of the act and to order payment therefor from available public funds. An individual member of the board of supervisors has authority neither to undertake improvement work nor to order warrants to be drawn against the district's funds which are paid into the county treasury for the purposes set forth in the act. Hence the trial court properly sustained the board members' demurrer without leave to amend.

Finally, the plaintiffs correctly contend that the trial court should not have sustained the county's special demurrer on the ground that the complaint was uncertain, ambiguous and unintelligible. The county argues that the complaint was defective because in one instance it refers to a "pipe" as an obstruction in the ditch and in other instances to "obstructions" without precise specification. In this respect the county is insisting upon undue refinement in pleading. This court stated in *Leet* v. *Union Pac. R. Co.*, 25 Cal.2d 605, at page 619 [155 P.2d 42, 158 A.L.R. 1008], that ". . . The essence of the matter is fairness in pleading to give the defendant such notice by the complaint that he may prepare his case." Thus considered, the allegations of the complaint are neither uncertain, ambiguous nor unintelligible.

The judgment in favor of the county of Ventura is reversed with directions to overrule its demurrers. As to the Saticoy

Storm Drain Maintenance District and the individual members of the Ventura County Board of Supervisors, the judgment is affirmed, the county of Ventura to bear the costs of appeal.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

The petition of respondent County of Ventura for a rehearing was denied November 16, 1955.