[Civ. No. 46698. Second Dist., Div. Two. July 22, 1976.]

RAY ELLISON, Plaintiff and Appellant, v.
CITY OF SAN BUENAVENTURA et al., Defendants
and Respondents.

**COUNSEL**

Heily, Blase, Ellison & Wellcome, Edward L. Lascher and Wendy Cole Wilner for Plaintiff and Appellant.

Donald S. Greenberg, City Attorney, Bruce Leavitt, Don Dewberry and Donald C. Fesler for Defendants and Respondents.

## OPINION

FLEMING, J.—Ray Ellison, on behalf of himself and other property owners, boat owners, and taxpayers within the Portobello Maintenance District and the Ventura Port District, sued the City of San Buenaventura and the County of Ventura for injunctive relief and damages for interference with easement rights to the waterways of the districts. The trial court sustained without leave to amend demurrers to the third amended complaint for failure to state a cause of action, and Ellison has appealed the judgment of dismissal.[1]

Arundell Barranca is a natural drainage-way to the Pacific Ocean serving a watershed of over 7,000 acres entirely within the county and largely within the city. The barranca empties into canals and waterways which have been designed, constructed, and dredged by the two districts to make the barranca useable by small pleasure boats of residents of the developed area and patrons of its marina. According to the complaint "The waterways maintained by Port District were created by dredging in 1962 and 1963. The waterways maintained by Portobello were created by dredging for Pacesetter Homes, completed in 1964. Said waterways were designed, and are used, for the passage of small boats, including those operated by plaintiff and by other property owners within Portobello. . . ."

The waterways, as constructed, form a catch and settling basin for particulate matter flowing down the barranca. As stated in the complaint: "Until 1961, said barranca was a natural drainageway, emptying directly into the Pacific Ocean. Construction of the waterways . . . changed the terminus of the barranca so that it now empties into those waterways rather than flowing directly into the ocean, the waterways forming a catch basin for solid materials flowing down the barranca." Defendants county and city are charged with having constructed streets, alleys, and drainage-ways and having permitted residential, commercial, and industrial development of property to take place within the watershed from 1962 to the present time without imposing suitable

---

[1]In a footnote to his appellate brief, Ellison claims the trial court did not sustain a demurrer to a separate cause of action against the city, which alleged a municipal duty to keep the waterways of Portobello District clear of silt and debris. The record on appeal, which consists solely of the clerk's transcript, does not confirm this claim. Moreover, the claimed vitality of the separate cause of action is inconsistent with Ellison's request for dismissal of the entire complaint against the city and his appeal from the judgment against the city, which, if a cause of action were still pending against the city, would not be an appealable final judgment. (*Johnson* v. *Master Fan Corp.*, 181 Cal.App.2d 569, 572 [5 Cal.Rptr. 187].)

controls to prevent erosion and pollution of the barranca and protect the property interests of plaintiff. Defendants county and city acted ". . . with knowledge that, without the proper controls on construction, said construction and development would cause erosion and the deposit into Arundell Barranca, and consequently into the waterways of Portobello and Port District, of silt and debris far beyond that which would occur naturally, and far beyond that which would be the ordinary concomitant of the natural runoff of water into the barranca. . . . It was foreseeable at the time of construction of the Port District waterways that silt and debris carried down the barranca would be deposited in said waterways rather than carried out to the ocean as had occurred previously, because of the change said construction caused to the barranca's natural condition. . . . [The] result of the uncontrolled construction of streets, alleys, and drainageways and the uncontrolled grant of building permits for the development of real property was erosion and deposit into the barranca of quantities of silt and debris far in excess of that which would ordinarily occur with the runoff of water into the barranca."

Plaintiff asserts that as a consequence of this periodic buildup of silt and debris in the waterways he has been subjected to increased taxation by the two districts in order to pay for dredging and maintenance of the waterways. On behalf of himself and his class he seeks injunctive relief, damages of $1 million from each defendant for the taking of easement rights, and damages of $3 million from each defendant for trespass to property and reduction in property values.

The trial court sustained demurrers to the third amended complaint without leave to amend after finding that "the alleged damage, if any, is a consequence of run-off through a natural watercourse and that plaintiff cannot amend his complaint to allege additional facts which would remove the case from the operation of this rule." Plaintiff has subsequently conceded that water pollution is not involved, in that neither sewage, noxious chemicals, nor harmful bacteria have been discharged into the waterways. In substance, plaintiff charges that because defendants authorized the development of upstream properties within the barranca watershed, the water flowing into the barranca is dirtier than would otherwise be the case and sediment builds up in the canals and waterways at a faster rate than it would without upstream development, to plaintiff's injury and damage.

The parties to this litigation have briefed and focused on the issue whether the prevailing California natural-watercourse rule remains good

law in the light of the 1966 decision of *Keys* v. *Romley,* 64 Cal.2d 396 [50 Cal.Rptr. 273, 412 P.2d 529], which adopted a rule of reasonable use as the rule of liability for diversion of surface waters.

The natural-watercourse rule, as set out in *San Gabriel V. C. Club* v. *Los Angeles,* 182 Cal. 392, 404 [188 P. 554, 9 A.L.R. 1200], provides: ". . . an improvement for the purposes of drainage of lands above does not give a lower riparian owner on the stream a cause of action merely because the improvement increases the volume of water coming to his land in the stream with the incidents necessarily accompanying such increase of volume, but without affecting the stream in any other manner." The court explained the reason for the rule: ". . . Not to permit an upper land owner to protect his land against the stream would be in many instances to destroy the possibility of making the land available for improvement or settlement and condemn it to sterility and vacancy. Such a rule would seriously interfere with the development of the country. . . ." (P. 401.) The natural-watercourse rule was last reaffirmed by the California Supreme Court in 1941 in *Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1].

■ The natural-watercourse rule grants immunity to upper landowners for damage to lower landowners caused by increased silt and debris. *The Weinberg Co.* v. *Bixby,* 185 Cal. 87, 97 [196 P. 25], is in point: "It follows from the authorities cited that the construction of dikes along and parallel with the river banks and the mere deepening of the river channel along its natural course . . . for the protection of their respective lands on one or the other banks of the river, or by their joint action through dikes on both sides of the river, were not wrongful so long as they did not obstruct the natural flow of the stream or divert its course. . . . Even though the effect upon the channel of the stream below, by reason of increased flow and current between the embankments, was to silt and obstruct the lower channel, it would afford no ground of action. If the defendants merely fend the intruding waters from their own premises in a reasonable and prudent manner, they cannot be held responsible for the action of the stream in depositing more silt and debris either in the channel or on adjacent lands below than would have been done had it been permitted to spread over defendants' lands." Plaintiff cites no contrary authority to this construction of the natural-watercourse rule. *Mogle* v. *Moore,* 16 Cal.2d 1 [104 P.2d 785], dealt with the flooding of surface waters. *Bauer* v. *County of Ventura,* 45 Cal.2d 276 [289 P.2d 1], involved flooding overflow from a storm drain. And *Frustuck* v. *City of Fairfax,* 212 Cal.App.2d 345 [28 Cal.Rptr. 357], concerned the piling of

dirt on another's property while enlarging a ditch. None of these cases considered the problem of silt and debris concomitant to increased or reduced flow in a natural watercourse.

Plaintiff argues the natural-watercourse rule has been, or should be, superseded by the rule of reasonable use, under which damage to downstream landowners from the increased or reduced flow of a natural watercourse is weighed in each case against benefits to upstream landowners from the change. *Keys v. Romley,* 64 Cal.2d 396, 409, 410 [50 Cal.Rptr. 273, 412 P.2d 529], adopted the rule of reasonable use as the rule governing liability for diversion of surface waters. Under this rule it becomes the duty of each property owner to take reasonable care to avoid injuring adjacent property by the diversion of surface waters, and the equal duty of a person threatened with such injury to take reasonable precautions to avoid or reduce the injury. The rule of reasonable use contemplates a balancing of the equities between the benefits accruing to the diverting owner from his improvements and the detriment caused other property owners by the diversion of surface waters. *Keys* did not consider the natural-watercourse rule, but plaintiff argues that the same rule of reasonable use should apply to surface waters and to natural watercourses alike, and that it is inconsequential whether water is directly diverted to an adjoining landowner's property or indirectly diverted onto his property through the agency of a natural watercourse.

■ For purposes of argument we assume that the rule of reasonable use applies to both surface waters and to natural watercourses. Nevertheless, the demurrer must be sustained because plaintiff has failed to set out facts establishing defendants' liability for damages and facts showing unreasonable use of property by defendants that would require a court to balance the benefits of defendants' improvements against the detriment assertedly suffered by plaintiff.

1. The first difficulty with plaintiff's pleading is that it intermingles liability of a public entity for its own development and construction with asserted liability of a public entity for issuance of subdivision, building, and other permits for private construction and development, the latter in flat contradiction to the provisions of Government Code section 818.4: "A public entity is not liable for an injury caused by the issuance . . . of . . . any permit, license, certificate, approval, order, or similar authorization where the public entity . . . is authorized by enactment to determine whether or not such authorization should be issued . . ."

Plaintiff's only authority for the proposition that a public entity may be held liable for injury caused by a private development for which it has issued a permit is *Sheffet* v. *County of Los Angeles,* 3 Cal.App.3d 720 [84 Cal.Rptr. 11]. In *Sheffet,* however, the public entity approved subdivision plans by a developer which included two streets to be dedicated to public use. The public entity did not construct the streets, but it later accepted them for public use, and as a consequence it thereafter became liable as principal for damages caused by improper construction and installation of insufficient drainage on the two streets by its agent in fact, the developer. At bench, the complaint appears to seek damages resulting in large part from private improvement and development of property in which the county and city played no part other than their approval of plans and issuance of permits. Such latter claims for damages are not actionable.

2. Even if we assume that plaintiff's damages resulted from public improvements made by or on behalf of defendants and for which they can be held liable, the complaint avers nothing other than normal development and improvement of upstream property by developers and improvers acting pursuant to subdivision, construction, and building permits. Plaintiff has not pleaded any facts showing unreasonable conduct by defendants and showing plaintiff's inability to take reasonable precautions to avoid or reduce his potential injury from upstream development. Instead, plaintiff has merely presented a bald demand for $8 million damages against the county and city for allowing other property owners within the watershed to improve their properties.

In effect, plaintiff, having himself made extensive improvements to a natural waterway, having altered the barranca's outlet to the ocean, and having dredged and improved a natural stream and surrounding terrain to create small-boat canals and waterways, now seeks to preclude upper landowners from improving their property through normal development on the ground that such improvement would accelerate silting in the canals and waterways he has dredged. No facts are set out to show either defendants' unreasonable use of property or defendants' negligence in the authorization or construction of upstream improvements. If, for example, plaintiff had alleged that in specified locations defendants had cleared and then abandoned large proprietary areas of the barranca watershed and allowed those areas to erode into gulleys which in time of heavy rain poured silt into the waterways, a cause of action might have been stated against defendants for unreasonable use of their property or for nuisance. No such facts are set out. It is merely asserted that

defendants knew that upstream development would cause silt and debris to enter the barranca in derogation of plaintiff's downstream improvements, and that defendants could have planned upstream development differently in order to avoid increased downstream silting. But defendants' knowledge of the consequences of upstream improvement and their ability to prevent those consequences make up only part of the equation of reasonable use, and the complaint is silent on other factors going into the required balance of interests. What were the needs for upstream development as opposed to those for downstream development? How does the cost of prevention of increased silting compare with the damages caused by increased silting? What should be balanced in this case: each upstream development against each downstream development; all upstream development against all downstream development; part of one against all of the other? Assuming that the rule of reasonable use applies to natural watercourses, sufficient facts have not been pleaded to state a cause of action for unreasonable use.

Plaintiff relies on *Holtz* v. *Superior Court,* 3 Cal.3d 296 [90 Cal.Rptr. 345, 475 P.2d 441], a decision recognizing the liability of public entities for damages to a building caused by loss of lateral support during their excavation for a new San Francisco rapid transit system. The court reaffirmed the principle originally stated in *Albers* v. *County of Los Angeles,* 62 Cal.2d 250 [42 Cal.Rptr. 89, 398 P.2d 129], that physical injury to real property, caused by an improvement deliberately designed and constructed by a governmental entity, is compensable in inverse condemnation whether or not the injury was foreseeable. The court noted, however, that the general public policy of socializing the burdens of public improvement does not call for open-ended, absolute liability, and it acknowledged and recognized the right of the landowner to protect his interests, citing *Archer* v. *City of Los Angeles,* 19 Cal.2d 19 [119 P.2d 1], and *San Gabriel V. C. Club* v. *Los Angeles,* 182 Cal. 392, 401 [188 P. 554, 9 A.L.R. 1200].

In sum, plaintiff seeks to turn the natural-watercourse rule upside down: he claims for himself an absolute right to change natural conditions and the natural flow of water in order to enjoy the pleasures of his downstream waterfront-property development, and he claims a right thereafter to freeze the new status quo and prohibit upstream property owners from effecting any changes in the now altered flow of water regardless of the expense to upstream development. We find no basis of support for his claim in law or in reason.

We conclude that plaintiff's complaint failed to state a cause of action, either under the natural-watercourse rule or the rule of reasonable use, and the demurrer was properly sustained.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied August 17, 1976, and appellant's petition for a hearing by the Supreme Court was denied October 20, 1976. Clark, J., did not participate therein.