[No. A017407. First Dist., Div. Three. Jan. 29, 1985.]

EARL R. SOUZA et al., Plaintiffs, Cross-defendants and Respondents, v.
SILVER DEVELOPMENT COMPANY et al.,
Defendants, Cross-defendants and Respondents;
KIM SWARTZ, Individually and as Executor, etc., et al.,
Defendants, Cross-complainants and Appellants.

**COUNSEL**

John B. Hallbauer, Alan P. Cusick, Douglas & Crawford, E. Clement Shute, Jr., Alletta d'A. Belin and Shute, Mihaly & Weinberger for Defendants, Cross-complainants and Appellants.

Donald W. Curran and Curran & Alschuler for Plaintiffs, Cross-defendants and Respondents.

John F. Van De Poel, Marc E. Abramson and Van De Poel, Strickland & Haapala for Defendants, Cross-defendants and Respondents.

**OPINION**

**SCOTT, J.**—This litigation arose out of landslide damage to two lots in the City of Pinole. Earl and Shirley Souza (Souzas) filed an action for damages against several defendants, among them certain development companies, the City of Pinole (City) and their neighbors Kim and Floyd Swartz[1] (Swartzes).

---

[1]Floyd Swartz is now deceased. At trial, Kim Swartz was substituted in individually and as the representative of the estate of Floyd Swartz.

Their causes of action against the developers alleged negligence and strict liability, the cause of action against the Swartzes alleged nuisance, and that against the City, inverse condemnation. The Swartzes cross-complained against the developers and the City. The City cross-complained against all parties for equitable indemnity. After a court trial, judgment was entered against the City and for the Souzas in the amount of $38,000 plus attorney's fees, for the Swartzes in the amount of $15,000 plus attorney's fees, and for the developers, exonerating them from any liability. The City has appealed; Mrs. Swartz also has appealed insofar as the judgment awards her only $15,000.

I

Pinole Creek commences outside the City of Pinole, meanders through the City, and eventually empties into San Pablo Bay. The Souzas and the Swartzes (who will sometimes be referred to jointly as plaintiffs) live in homes on adjoining lots in Pinole; the Swartzes' lot (lot 82) adjoins the creek, while the Souzas' lot (lot 83) is in close proximity to the creek.

When the subdivision including these lots was developed, the developers were required by the City to construct storm drains to carry surface water into Pinole Creek; those drains were dedicated to and accepted by the City. In addition, the developers were required to dedicate a drainage easement along the channel of the creek; the City also accepted that easement. Early in the development process, the developers requested that the City allow the straightening of the creekbed, to enable the development of more lots. The request was turned down, on the ground that granting it would be "environmentally undesirable."

In approximately 1974, the City acquired by trade with the developer a lot known as lot 5, which became known as Savage Avenue Park and which is adjacent to lot 82 and borders Pinole Creek. Shortly thereafter, a landslide damaged that property, which the City repaired. The County Flood Control District advised the City by letter dated June 14, 1974, of the potential for erosion damage which might eventually endanger lots 82 and 83.

In mid-January 1978, a landslide did occur which caused substantial damage to lots 82 and 83. The Souzas repaired their lot in 1978, for $38,000; the Swartzes did not repair their damage until 1980, and their repair costs were over $78,000. At trial, plaintiffs' expert witness testified that the cause

of the slide was erosion from the action of the creek. The City's expert witness testified that a number of factors contributed to the slide, including the presence of a zone of weak clay underlying the fill which had been placed by the developers. There was also undisputed evidence that erosion of the type which occurred is a natural occurrence in all meandering creeks such as Pinole Creek.

Among its findings of fact, the trial court found that the creek was part of the City's overall storm drain system, that the landslide resulted from erosion along the east bank of Pinole Creek, and that the creek, functioning as a deliberately included element of the City's storm drain system and utilized as such, was a substantial cause in bringing about the landslide which damaged the properties. The court also found that prior to 1975, the City knew or should have known that erosion was occurring and that unless corrective action was taken, a landslide might eventually endanger the houses on lots 82 and 83. The court concluded that the city negligently maintained its easement, and negligently refused to permit the developers to straighten and realign the creek, and that the City's negligence was the proximate and substantial cause of the landslide and damage. The court also found that the Swartzes had failed to take appropriate action to mitigate their damages when the slide occurred in 1978; as a result, the court awarded them only $15,000.

## II

The City of Pinole contends that the facts of this case do not support a judgment in inverse condemnation. The City argues that: (1) because Pinole Creek is a natural creek, there is no evidence of damage by a public improvement; (2) the City's actions were not a proximate cause of the damage. The City also contends that its actions were immunized by the "natural watercourse" exception to inverse condemnation liability. (See *Archer* v. *City of Los Angeles* (1941) 19 Cal.2d 19 [119 P.2d 1]; *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 305-306 [90 Cal.Rptr. 345, 475 P.2d 441]; *Ellison* v. *City of San Buenaventura* (1976) 60 Cal.App.3d 453, 457 [131 Cal.Rptr. 433].)[2]

---

[2]The City's notice of appeal states broadly that it appeals "from the whole of the judgment." However, in its briefing to this court, the City does not attack that portion of the judgment ordering that it take nothing in its cross-complaint for equitable indemnity, and it concedes that although the evidence was in conflict, substantial evidence supports the trial court's finding that erosion caused the landslide. Accordingly, we conclude that the City has abandoned any contention that the judgment as to that cross-complaint was in error. (*Henderson* v. *Security Nat. Bank* (1977) 72 Cal.App.3d 764, 769 [140 Cal.Rptr. 388]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4393.)

■ Article I, section 19 (formerly art. I, § 14) of the California Constitution requires that just compensation be paid when private property is taken or damaged for public use. Therefore, a public entity may be liable in an inverse condemnation action for any physical injury to real property proximately caused by a public improvement as deliberately designed and constructed, whether or not that injury was foreseeable, and in the absence of fault by the public entity. (*Holtz* v. *Superior Court, supra,* 3 Cal.3d at pp. 303-304; *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 263-264 [42 Cal.Rptr. 89, 398 P.2d 129].)

A storm drainage system constructed and maintained by a public entity is such a public improvement. (*Marin* v. *City of San Rafael* (1980) 111 Cal.App.3d 591, 595 [168 Cal.Rptr. 750]; see also *Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 197 [183 Cal.Rptr. 881].) An action in inverse condemnation will lie when damage to private property is proximately caused by use of a storm drainage system for its intended purpose. (See, e.g., *Yee* v. *City of Sausalito* (1983) 141 Cal.App.3d 917, 920-923 [190 Cal.Rptr. 595] [complaint alleges that a gutter in a storm drainage system ruptured, allowing surface water to seep into subsurface soil, causing massive soil subsidence on plaintiff's property; parties agree that damage proximately resulted from water seepage; complaint states cause of action in inverse condemnation].) The fact that a part of the system may have been actually constructed by a private person will not insulate a public entity from liability, if the system has been accepted or otherwise approved by the public entity. (*Marin* v. *City of San Rafael, supra,* 111 Cal.App.3d at p. 595.)

■ The City argues that the creek itself was not a public improvement or public project. However, the trial court found that the creek was utilized by the City as part of its storm drainage system. The evidence established that the City required the developer to construct storm drains to carry surface water into the creek and accepted the dedication of those drains. The City also required the developer to dedicate an easement for drainage along the creek channel, and accepted that easement. That evidence was sufficient to support the court's finding. Even though a part of the system was not man-made, the entire system was a public improvement or project which might subject the City to liability in inverse condemnation. (See *Stoney Creek Orchards* v. *State of California* (1970) 12 Cal.App.3d 903, 905-907 [91 Cal.Rptr. 139] [allegation that bank of Sacramento River was eroded by design and operation of Central Valley Project, including use of that river as canal for transportation of water, was sufficient to state cause of action for inverse condemnation].)

■ We next consider whether plaintiffs' damage was proximately caused by the use of the public improvement for its intended purpose. (*Yee* v. *City of Sausalito, supra,* 141 Cal.App.3d at p. 921.) There must be some causal connection between conduct on the part of the defendant public entity and the plaintiff landowner's damage. (*Youngblood* v. *Los Angeles County Flood Control Dist.* (1961) 56 Cal.2d 603, 610 [15 Cal.Rptr. 904, 364 P.2d 840].) In *Youngblood,* for example, defendant flood control district constructed and maintained a partially completed pipe and wire revetment (a facing used to sustain an embankment) in a natural watercourse adjoining plaintiff's land. The revetment became clogged with debris, and water flowed onto plaintiff's land. The appellate court held that defendant district would be liable in inverse condemnation only if its revetment either diverted the waters, or caused the debris to accumulate and was thereby responsible for the diversion. If the debris caused the diversion but accumulated for no reason connected with the revetment, defendant would not be liable. (*Ibid.*)

The use of the public improvement need not be the sole cause of the injury; a public entity may be liable even if its project was only one of several "substantial" concurring causes of the damage. (*Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77, 83-88 [107 Cal.Rptr. 727] [evidence that public entity's street construction was at least one of several substantial concurring causes of a landslide]; see also *Marin* v. *City of San Rafael, supra,* 111 Cal.App.3d at p. 595.) Nevertheless, there must be a showing of "a substantial cause-and-effect relationship excluding the probability that other forces *alone* produced the injury." (*Olson* v. *County of Shasta* (1970) 5 Cal.App.3d 336, 343 [85 Cal.Rptr. 77], citing Van Alstyne, *Inverse Condemnation: Unintended Physical Damage* (1969) 20 Hastings L.J. 431, 436, italics added.)[3]

*Tri-Chem, Inc.* v. *Los Angeles County Flood Control Dist.* (1976) 60 Cal.App.3d 306 [132 Cal.Rptr. 142], is instructive on the issue of proximate cause. In that case an elaborate drainage or flood control system maintained by several public entities failed, and plaintiffs' property was flooded. Judgment was entered in favor of plaintiffs in their inverse condemnation action against those entities. The appellate court reversed on the ground that

---

[3]As several courts have acknowledged, Van Alstyne comments that the "proximate cause" terminology may be confusing, because proximate cause in tort law is often defined in terms of foreseeability, whereas in inverse condemnation cases liability is imposed without regard to foreseeability; Van Alstyne suggests that the test should more precisely be stated in terms of "substantial" causation. (Van Alstyne, *supra,* 20 Hastings L.J. at pp. 435-436; see *Holtz* v. *Superior Court, supra,* 3 Cal.3d 296, 304, fn. 9; *Blau* v. *City of Los Angeles, supra,* 32 Cal.App.3d at p. 84; *McMahan's of Santa Monica* v. *City of Santa Monica* (1983) 146 Cal.App.3d 683, 699, fn. 2 [194 Cal.Rptr. 582].)

the public entities' conduct was not a proximate cause of the harm. "For defendants to be liable to plaintiffs, their conduct must, minimally, have resulted in more water than would have otherwise flowed onto the plaintiffs' land, which greater quantity results in damage. [Citations.]" (*Id.*, at p. 311, fn. omitted.) That "obvious proposition" was applicable, the court stated, whether the waters were characterized as flood, surface, or channel waters. (*Ibid.*)

Plaintiffs in *Tri-Chem* had failed to make the necessary showing. On the contrary, the record established that without benefit of the project, the flooding would have been worse. There was no evidence that the system did not work as it was designed to function, no evidence that it caused any sudden surges or even accelerated the flow, and no evidence that any water which reached plaintiffs' properties did not follow the natural drainage pattern. (*Id.*, at pp. 311-312.)

In this case, the trial court concluded that the City's negligence in maintaining its drainage easement and in failing to permit the developers to straighten and realign the creek was the proximate and substantial cause of the landslide and damage. However, the court's conclusion ignores the undisputed evidence that despite the absence of erosion control devices, the City's storm drainage system added only "a minimal amount" of water to the creek. Moreover, there was no evidence that this minimal addition caused the erosion which led to the landslide.[4] On the contrary, the evidence was undisputed that the erosion which occurred was a natural phenomenon in all meandering creeks such as Pinole Creek. In other words, there was no showing excluding the probability that the natural flow of the creek alone caused the damage. Plaintiffs cite no case in which a public entity has been held liable in inverse condemnation even though its public improvement had no effect on the flow of water in a natural watercourse. For example, in *Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276 [289 P.2d 1], upon which plaintiffs rely, defendants built a system of ditches and levees which diverted water away from its natural course. (*Id.*, at p. 281.) Accordingly, on this record, we can only conclude that the evidence does not establish that the City's drainage system was a proximate cause of plaintiffs' damage, and judgment against the City and in favor of plaintiffs must be reversed.

In light of our conclusion, we need not consider the City's contention that the *Archer* or "natural watercourse" rule immunized it from liability in this case, or the Swartzes' contention that the court erred in concluding that they failed to mitigate their damages.

---

[4]The impact of the drainage system was so insignificant that the Souzas state that there was *no* evidence that the storm drainage system increased the volume of water in the creek.

That portion of the judgment against the City on the inverse condemnation causes of action is reversed; in all other respects, judgment is affirmed. Each party is to bear its own costs.

White, P. J., and Anderson, J.,* concurred.

A petition for a rehearing was denied February 28, 1985, and the petition of respondents Souza and appellant Swartz for a hearing by the Supreme Court was denied April 3, 1985. Bird, C. J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.