[No. B013978. Second Dist., Div. Seven. June 13, 1986.]

NORMAN W. YOX et al., Plaintiffs and Appellants, v.
CITY OF WHITTIER, Defendant and Respondent.

**COUNSEL**

Zeutzius & LaBran and William J. Zeutzius for Plaintiffs and Appellants.

J. Robert Flandrick, City Attorney, Burke, Williams & Sorensen and Virginia R. Pesola for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—Plaintiffs Norman and Juanita Yox appeal from the summary judgment in favor of defendant City of Whittier (City). Plaintiffs live on a private street in Whittier named Rideout Place. The private street and the lots upon which the homes of plaintiffs and their two uphill neighbors are located were created by a four-way lot split (LS 60-07) which was

applied for by the then-owner of all the affected property. Plaintiffs filed a complaint against City for inverse condemnation (first cause of action) and their two uphill neighbors for nuisance (second cause of action), alleging that their property has been the subject of an unreasonable and excessive surcharge of the natural easement for runoff surface waters from the two lots above plaintiffs.[1] Plaintiffs claimed their property was damaged because excess water runs down the private street and collects in front of their property.

City moved for summary judgment on the ground that it could not be held liable for the circumstances existing on Rideout Place because there is "no public work or improvement upon which to predicate public liability for inverse condemnation." In support of its motion, City submitted the affidavit of the city engineer and director of public works and the administrative record of all city departmental actions with respect to residential structures located on the properties included within lot split LS 60-07. Plaintiffs did not file any affidavits or exhibits in opposition. This appeal followed the court's granting of City's summary judgment motion. For the reasons that follow, we affirm the judgment.

The uncontradicted evidence submitted on the summary judgment motion established the following: On June 8, 1960, upon the recommendation of the planning commission, the city council approved lot split LS 60-07. The approval was subject to conditions, including: "[a] joint agreement shall be executed covering the maintenance of this roadway" and "[t]he drainage from the lots and street shall be carried to an approved storm drain or natural water course in such a manner as to prevent damage or nuisance to adjoining properties or erosion of any type."

A grading permit was issued on July 27, 1960. The grading plan submitted with the permit provided for drainage from the finished pad area to the private street. The drainage pattern and the devices to be installed were designed by the subdivider. Surface water flows into the private street by means of gravity or sump pumps located in the private residences. As shown by the final grading plan, the drainage from the lots flows down the street to a catch basin built by the developer, then through a concrete channel also built by the developer, to an existing ditch. Although the condition of lot split map approval would have permitted other methods of disposing of the surface water runoff, the owner-developer chose to use the street, a common and acceptable practice in grading subdivisions.

---

[1] According to plaintiffs' brief, they prevailed in a jury trial on their second cause of action against their uphill neighbors for nuisance.

In 1964, in accordance with the conditions for map approval, a "Maintenance Agreement" for the private street was executed and recorded. This agreement required present and future property owners of Rideout Place to maintain the private street and to share proportionately in the costs for such maintenance. The agreement did not provide for city responsibility for maintenance of the private street or for enforcement of the provisions of the agreement among the property owners.

In May 1964, the planning commission authorized the planning director to certify final approval of the subdivision map. Building permits were issued in June 1972, December 1975 and June 1976, for single-family residences on 12128, 12122 and 12114 Rideout Place. Plaintiffs purchased 12114 Rideout Place, which was located on the lowermost lot, in March 1978, after their uphill neighbors had purchased and occupied the homes on the two other lots.

## DISCUSSION

The trial court did not abuse its discretion in awarding City summary judgment. ■ A summary judgment is proper only if the affidavits of the moving party would be sufficient to support a judgment in his favor, and doubts as to the merits of the motion should be resolved in favor of the party opposing the motion. (*Becker* v. *IRM Corporation* (1985) 38 Cal.3d 454, 458 [213 Cal.Rptr. 213, 698 P.2d 116].) Nonetheless, where, as here, there is no material issue of fact to be tried and the sole question remaining is one of law, it is the duty of the court to determine the issue. (*Angelus Chevrolet* v. *State of California* (1981) 115 Cal.App.3d 995, 1000 [171 Cal.Rptr. 801].) ■ On the undisputed material facts herein, the trial court properly determined that City could not be held liable in inverse condemnation.[2]

■ The authority for prosecution of an inverse condemnation proceeding derives from article I, section 19, of the California Constitution. (*Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 867 [218 Cal.Rptr. 293, 705 P.2d 866].) That section requires that just compensation be paid when private property is taken or damaged for public use. (*Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 296 [142 Cal.Rptr. 429, 572 P.2d 43].)

---

[2]Plaintiffs apparently now contend on appeal that there are factual issues as to whether the public at large was intended to benefit from the drainage plan and the drainage plan is under the control of the community. But these issues were not raised below in the complaint or on the summary judgment motion, and the uncontradicted evidence submitted by City shows only private benefit and private control.

■ The policy underlying the constitutional provision is to distribute throughout the community the loss inflicted upon the individual by the making of public improvements. (*Ibid.*; *McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683, 698 [194 Cal.Rptr. 582].) Thus, a public entity may be liable in an inverse condemnation action for any physical injury to real property proximately caused by a public improvement as deliberately designed and constructed. (*Holtz v. Superior Court* (1970) 3 Cal.3d 296, 303-304 [90 Cal.Rptr. 345, 475 P.2d 441]; *Souza v. Silver Development Co.* (1985) 164 Cal.App.3d 165, 170 [210 Cal.Rptr. 146].)

■ The principle of inverse condemnation, however, will not subject a public entity to general tort liability. (*McMahan's of Santa Monica v. City of Santa Monica, supra,* 146 Cal.App.3d at p. 694.) If a plaintiff is unable to show that the public entity's conduct, although negligent, is in pursuance of a public use, an action based on inverse condemnation will fail. (See Condemnation Practice in Cal. (Cont.Ed.Bar 1973) § 13.4, p. 337.)[3]

■ "Public use" within the meaning of California Constitution, article I, section 19, has been "defined as a use which concerns the whole community or promotes the general interest in its relation to any legitimate object of government." (*Bauer v. County of Ventura* (1955) 45 Cal.2d 276, 284 [289 P.2d 1]; *Marin v. City of San Rafael* (1980) 111 Cal.App.3d 591, 595 [168 Cal.Rptr. 750]; *Frustuck v. City of Fairfax* (1963) 212 Cal.App.2d 345, 358 [28 Cal.Rptr. 357].) "To make a use public in character, a duty must fall on the person or corporation holding the property appropriated by eminent domain to furnish the public with the use intended and the public must be entitled to use or enjoy the property taken." (*Bauer v. County of Ventura, supra,* 45 Cal.2d at p. 284.)

■ Here, however, there was no such public use. The undisputed facts show, and plaintiffs themselves admit in their complaint and brief, that the street and pumps which constituted the drainage system were entirely pri-

---

[3]The only question here is City's liability under a theory of inverse condemnation. Plaintiffs have not sought, and cannot at this point seek, damages from City on a tort theory. Even if they could overcome the apparent governmental immunity for negligence in discharging a discretionary governmental function in issuing building permits and approving plans (see, e.g., Gov. Code, §§ 818.4, 818.6; *Slagle Constr. Co. v. County of Contra Costa* (1977) 67 Cal.App.3d 559 [136 Cal.Rptr. 748]; *Burns v. City Council* (1973) 31 Cal.App.3d 999 [107 Cal.Rptr. 787]), the pleadings show that plaintiffs have not complied with the governmental claims requirement.

vately built and maintained and were never dedicated to or accepted by the public.[4]

Plaintiffs basically complain of City's "acts of omission" in issuing building and plumbing permits and in approving allegedly defectively designed plans violating its lot split approval condition that drainage not damage adjacent properties. Plaintiffs, however, cite no authority, nor has our research uncovered any, for holding a city liable in inverse condemnation for injury to private property within a subdivision resulting from completely private construction—privately designed, financed and built—on a private street where the city's sole affirmative action was the issuance of permits and approval of the subdivision map.

Rather, the existing law is to the contrary. In *Ellison* v. *City of Buenaventura* (1976) 60 Cal.App.3d 453 [131 Cal.Rptr. 433], the court held that a city was not liable to a downstream property owner for sediment buildup in downstream waterways at a faster rate than would have occurred without upstream development which had been authorized by the city. The court ruled that where, as here, the city "played no part [in the private development of the upstream property] other than [the] approval of plans and issuance of permits," the claims for damages against the public entity were not actionable. (*Id.,* at p. 459.)

Plaintiffs' reliance on *Sheffet* v. *County of Los Angeles* (1970) 3 Cal.App.3d 720 [84 Cal.Rptr. 11], is misplaced. In *Sheffet,* the court held that the county was not shielded from liability for damages from overflow of surface water from public streets onto plaintiff's property where the public entity had approved the plans for the adjacent subdivision, including its drainage system, and had accepted the streets of the subdivision. *Sheffet* stands for "[t]he well-established rule impos[ing] inverse condemnation liability on a public entity which has approved and accepted, for a public purpose, work performed by a subdivider or private owner of property." (*Blau* v. *City of Los Angeles* (1973) 32 Cal.App.3d 77, 87 [107 Cal.Rptr. 727]; Condemnation Practice in Cal. (Cont.Ed.Bar Supp. 1984) § 13.4, p. 181.) As the *Ellison* court pointed out in distinguishing *Sheffet,* although in *Sheffet,* the "public entity did not construct the streets, . . . it later accepted them for public use, and as a consequence it thereafter became liable as principal for damages caused by improper construction and in-

---

[4]Dedication is a grant and a gift of an interest in land by a private owner for the public use. (*Fisher* v. *Morrison Homes, Inc.* (1980) 109 Cal.App.3d 131, 135 [167 Cal.Rptr. 133].) Dedication of private property for public use requires an offer of dedication by the owner and an acceptance of the offer by the public entity. (*Union Transp. Co.* v. *Sacramento County* (1954) 42 Cal.2d 235, 240 [267 P.2d 10]; *Ackley* v. *City Etc. of San Francisco* (1970) 11 Cal.App.3d 108, 112 [89 Cal.Rptr. 480].)

stallation of insufficient drainage on the two streets by its agent in fact, the developer." (*Ellison* v. *City of Buenaventura, supra,* 60 Cal.App.3d at p. 459.) Streets, utilities and drainage systems, when accepted and approved by a municipality, become public improvements and part of its system of public works. (Condemnation Practice Supp., *supra,* § 13.4, p. 181.)

Our case, however, is crucially different from *Sheffet* and from all cases finding liability for inverse condemnation. Here, the damage was not even to adjacent property but to property within the particular private subdivision. And most importantly, this is a private street. Neither the drainage system nor the street was ever dedicated to the public or formally or implicitly "accepted" by City.

 A storm drainage system constructed and maintained by a public entity is a public improvement. (*Souza* v. *Silver Development Co., supra,* 164 Cal.App.3d at p. 170.) Moreover, "[t]he fact that a part of the system may have been actually constructed by a private person will not insulate a public entity from liability, if the system has been accepted or otherwise approved by the public entity." (*Ibid.*; *Marin* v. *City of San Rafael, supra,* 111 Cal.App.3d at p. 595.) Drainage systems are a matter of public policy when they affect the public. But where, as here, there is no acceptance of a street or the drainage system within it, there is no public improvement, public work or public use and therefore there can be no public liability for inverse condemnation.[5]

We realize that "[s]uch an approval or 'acceptance need not be by formal action but may be implied from official acts of dominion or control over the property, . . .'" (*Martin, supra,* at p. 595.) Thus, use of the land for a public purpose over a reasonable period of time constitutes an acceptance without any formal action in relation thereto by governmental authority. (*Id.,* at p. 596.) Moreover, such dominion and control can be shown if the public entity does maintenance and repair work. (*Ackley* v. *City Etc. of San Francisco, supra,* 11 Cal.App.3d at p. 111.) But here, there was neither public use nor public maintenance.

Plaintiffs' attempt to equate the approval of the subdivision map with the requisite acceptance for imposing liability in inverse condemnation is unpersuasive. Approval of a subdivision map does not constitute such an

---

[5]None of the cases considering inverse condemnation involved private streets or private drainage systems. For example, in *Souza* v. *Silver Development Co., supra,* 164 Cal.App.3d at page 170, "the entire system was a public improvement or project. . . ." The city had required the developer to construct the storm drains and had accepted the dedication of those drains. The city had also required the developer to dedicate a drainage easement and had accepted that easement. (*Id.,* at pp. 168, 170.)

acceptance of a pathway even when the street has been offered therein for dedication to the public use by the private owner. (*Ibid.*) A fortiori, it is not sufficient to impose liability on the public entity where, as here, there was no offer of dedication and the roadway was expressly designated as private.

The fundamental justification for inverse condemnation liability is that the public entity, acting in furtherance of public objectives, is taking a calculated risk that damage to private property may occur. (*McMahan's of Santa Monica* v. *City of Santa Monica, supra,* 146 Cal.App.3d at p. 697.) But that justification is absent here. To the contrary, by designating the street private and requiring present and subsequent property owners of the lots on that private roadway to be bound by a written agreement to maintain the street, City made it clear that it was foregoing any public use or benefit and thereby deliberately avoiding any such risk.

The plaintiffs chose to buy on a private street with its requirement of private maintenance and its privilege of restricting public access, use and enjoyment. In return for obtaining the benefit of excluding the public, they made a calculated decision to rely on themselves, their fellow property owners within the lot split and the subdivider for liability for resulting damage to their property. Their remedy is against the developer and/or their uphill neighbors who share responsibility for the maintenance of this private roadway.

There has been no inverse condemnation here. It would be unfair and contrary to the relevant constitutional provisions to inflict upon the community as a whole liability for a loss resulting from a strictly private improvement. Accordingly, the trial court properly granted summary judgment to City.

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.