[Civ. No. 23394. Fourth Dist., Div. Two. Feb. 11, 1981.]

RAPHAEL K. DECKERT et al., Plaintiffs, v.
COUNTY OF RIVERSIDE et al.,
Defendants, Cross-complainants and Appellants;
PETROLANE PROPERTIES, INC.,
Cross-defendant and Respondent.

COUNSEL

Roberts, Harrison & Dougherty, H. M. Dougherty, Best, Best & Krieger, Barton C. Gaut and William J. Cahill for Defendants, Cross-complainants and Appellants.

Jones, Mahoney & Brayton and Paul M. Mahoney for Cross-defendant and Respondent.

OPINION

McDANIEL, J.—This appeal is from a summary judgment entered in favor of a cross-defendant and against two separate defendants and cross-complainants who, after the case was at issue, had brought the prevailing cross-defendant, not named in the complaint, into the litigation by means of their cross-complaints for equitable indemnity and

contribution. The underlying action was brought to recover for a casualty loss allegedly suffered by the plaintiffs when their lands were flooded during the heavy rains in the winter of 1977-1978. Among the defendants named as responsible were the County of Riverside and certain land developers whose projects at the time were under construction in proximity to the plaintiffs' lands.

The plaintiffs' grievance pleaded initially against the County of Riverside was that it had so altered the intersecting streets at a corner of their property so as to dam up waters which would otherwise have naturally flowed over and through plaintiffs' property without causing damage. Plaintiffs also charged the county with negligence in approving the developers' plans and in granting their building permits.

Otherwise, plaintiffs charged the named developers with altering "the natural flow of the water in such a manner as to concentrate it at a point immediately adjacent to plaintiffs' property." It was further alleged that this conduct led to and caused damage to plaintiffs' property. Both injunctive relief and money damages were sought.

Most of the defendants demurred successfully to the original complaint and plaintiffs then filed a first amended complaint which all defendants answered. A motion by plaintiffs for an advanced trial setting was successful. Thereafter, the several named defendants moved for leave to file cross-complaints for indemnity and contribution. Their various motions were granted, and the trial date was necessarily continued. In filing their cross-complaints, each of the named defendants, besides naming each other, named as additional cross-defendants various parties who had not previously been sued in the litigation. Among those so named was Petrolane Properties, Inc., the party whose motions for summary judgment against the County of Riverside and against what we shall call the Northwoods group[1] were later granted and constitute the basis for the judgment appealed from.

In the instance of the Northwoods group's cross-complaint, the plaintiffs' first amended complaint was incorporated by reference, and they then added, "Cross-defendants, both those named in the amended complaint and those brought in by this cross-complaint, conducted themselves in the manner alleged in the complaint marked Exhibit '1',

---

[1]The cross-complainants are Northwoods Construction Co., Inc., a corporation, Foothill Service Corp., a corporation, and Northwood Mira Loma, a joint venture.

and the alleged causes of action therein contained, and those actions contributed to the injuries, if any, and to the damages, if any, sustained by plaintiffs." The Northwoods group then prayed for a declaration of comparative fault, in percentage terms, of themselves as to plaintiffs and all of the cross-defendants, including Petrolane, together with judgment by way of contribution from the others for any amount the Northwoods group was required to pay over and beyond its percentage share of comparative fault.

In the instance of the County of Riverside's cross-complaint, it was alleged "That prior to the filing of this Cross-Complaint a complaint and Amended Complaint has previously been filed by the plaintiffs, RAPHAEL L. DECKERT and DARLENE M. DECKERT, against this cross-complainant and others, in which said plaintiffs seek damages based on the allegations contained in the First Amended Complaint which has been filed in this matter. This cross-complainant has filed an answer to said First Amended Complaint, denying the allegations of said First Amended Complaint, to which reference is hereby made and is made a part hereof by a corporation [*sic*]. [¶] That if plaintiffs were, in fact, damages [*sic*] they allege which allegations are generally and specifically denied by this cross-complainant, and said injuries and damages were solely and/or substantially caused by the negligence and carelessness of the cross-defendants, and each of them, and therefore, cross-complainant is entitled to have the degree of negligence of cross-defendants, and each of them, determined by this Court under the principal [*sic*] of equitable indemnification."

Thereafter, all of the cross-defendants answered the several cross-complaints.

Next, plaintiffs moved the court for leave to file a second amended complaint, and this motion was granted. A careful reading of the first amended complaint and the second amended complaint shows that the two are for the most part identical until one reaches paragraph 15. In the second amended complaint the allegations found in paragraph 15 and following are substantially amplified to state a third grievance against the County of Riverside in that it "negligently approved plaintiffs' building permit with full knowledge that plaintiffs' property was located in a flood-prone area and subject to flooding." Otherwise the charging allegations against the other defendants are the same, and Petrolane is not named as a defendant. Again, all defendants answered

the second amended complaint. As a consequence, insofar as the record shows, these are the pleadings upon which the case will go to trial.

It was against this background, in terms of the foregoing state of the pleadings, that Petrolane moved for summary judgment as to all cross-complaints, including those of the Northwoods group and the County of Riverside. Additionally, the Northwoods group and the County of Riverside each moved for summary judgment against the plaintiffs. Both these latter motions were eventually denied, but that of Petrolane was granted as to the Northwoods group, the County of Riverside and two other cross-complainants. Judgment was entered accordingly, but only the Northwoods group and the County of Riverside appealed.

SYNOPSIS OF THE SUPPORTING PAPERS

In support of its motion, Petrolane filed the declaration of its president Donald E. Frink. That declaration set out that Petrolane owns a shopping center at the corner of Jurupa Road and Felspar Street in Riverside County which is about 1.5 miles easterly and northerly from the plaintiffs' property which in turn is located at the southwest corner of 58th and Beach Streets.

The Frink declaration stated that the first construction on the shopping center site was a Stater Bros. market which was completed September 30, 1976. Further construction on the shopping center site was completed between April 28, 1978, and September 1, 1978.[2]

The Frink declaration further disclosed that there is drainage of surface water from the shopping center property which moves both easterly and southerly. Those waters which drain southerly flow into and along a concrete drainage ditch which runs north and south along the east edge of the shopping center. The concrete ditch is connected at its south end to a pipe which runs under Jurupa Road and under certain railroad tracks which are parallel to and adjacent immediately to the south of the road.

The Frink declaration also indicated that the pipe in turn connects to a dirt drainage ditch which extends straight south for approximately .4 of a mile to a point where it connects to a pipe which extends under another set of railroad tracks and Van Buren Boulevard, both of which

---

[2]The flooding complained of occurred during the winter of 1977-1978.

run northwest and southeast with the result that a line extending from the dirt drainage ditch and the connecting pipe cross the tracks and Van Buren Boulevard on the bias.

The Frink declaration further showed that the pipe under Van Buren Boulevard empties into the bed of a natural stream which bears off south-southwesterly until it crosses 58th Street following which it makes a gentle swing to the west and then proceeds west, northwesterly until it reaches plaintiffs' property and then crosses it. All of the foregoing locations and configurations are clearly inscribed on a map attached to and incorporated into the declaration by reference.[3]

Otherwise, the declaration stated that Petrolane obtained all the required permits for the construction and operation of its shopping center and conformed to all other laws and regulations governing construction and operation of the shopping center. The declaration further stated that Petrolane had not entered into any contracts of indemnity with any party to the litigation.

Finally, although in our view it added little, if anything, of consequence to the legal impact of the declaration, Mr. Frink, in describing the course of water draining to the south from the shopping center punctuated his description of the path of flow with the words, "If the water has neither evaporated nor been absorbed into the ground" it would then proceed to the next segment of the route. In any event, as noted, the foregoing prose description of the course of drainage water from the Petrolane property was clearly delineated on a map submitted as part of the Frink declaration.

SYNOPSIS OF THE OPPOSITION PAPERS

The Northwoods group, in opposing the motion for summary judgment, filed the declaration of G. Bart Stryker, a registered civil engineer, who had been employed to do field engineering work in aid of the preparation of certain final subdivision maps covering areas within certain watershed areas which embrace the path of drainage waters described in the Frink declaration. The subdivisions are referred to in the declaration as tracts 8206-1 and 8206-2, and we are left to speculate as to whether these are the same as the "Mira Loma Tract"

---

[3]This map is attached as an appendix.

referred to otherwise throughout the pleadings as the development constructed by the Northwoods group.

Anyway, assuming that they are the same, the point which Mr. Stryker makes is that both these tracts and the shopping center are located within the same 6,000-acre watershed area. He states in this regard that "With an exception not now relevant, the surface water run-off from the Petrolane development and from tracts 8206-1 and 8206-2 of Ranch Estates drain into the same channel. The only difference is that the water from Ranch Estates drains directly into that channel while the water discharged from the Petrolane development drains into a tributary before it reaches the channel. That channel is the same one referred to in the declaration of Frink as the bed of a 'natural stream'."

The balance of the declaration explains in civil engineering terms that one cannot determine the volume of surface water runoff originating at the shopping center and reaching plaintiffs' property without knowing much more technical data involving absorption rates and the porosity of the soil and the like which, parenthetically, were not provided by the Frink declaration.

Mr. Stryker concludes by stating "On the basis of my observation of the property of the plaintiffs, it is my conclusion that the damage to the Deckerts' property is primarily caused by its location within the flood channel, although the cumulative effect of the up-stream development will increase the water in that channel."

The County of Riverside, in opposing Petrolane's motion for summary judgment, vis-a-vis the cross-complaint of the County of Riverside for indemnity and contribution, filed extensive points and authorities but no counter affidavits or declarations.

ISSUES AND DISCUSSION

On this appeal, all we are called upon to review is the propriety of the trial court's order granting the two motions for summary judgment in favor of Petrolane as against the Northwoods group and the County of Riverside. In deciding such motions, the trial court is guided by well-settled and clearly defined rules. ■ "Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not

by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue." (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785], confirmed in *Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 596 [125 Cal.Rptr. 557, 542 P.2d 981].)

■ In assessing the sufficiency of the declarations per *Stationers Corp.*, it is first necessary to ascertain from the pleadings the factual issues prospectively to be tried. In this case an uncommon situation obtains. Petrolane moved for summary judgment with reference to cross-complaints for equitable indemnity and contribution by which it, Petrolane, was brought into the litigation for the first time. As a consequence, such cross-complaints must, as a first requirement, allege facts which, if proved, would on some legally recognized theory fix liability upon Petrolane in favor of the plaintiff. This follows, for the cross-complainants are not seeking a direct recovery from Petrolane based upon the breach of some affirmative duty owed the cross-complainants; they only seek indemnity and contribution with reference to what they may be forced to pay in excess of their comparative share of any judgment recovered against them by the plaintiffs. In other words, we hold that for the cross-complainants to be entitled to contribution from Petrolane requires that Petrolane be cast in the role of a joint tortfeasor, and, because Petrolane was not named as a defendant in any of the complaints, *it became necessary for the cross-complainants to fulfill this office by alleging some theory upon which Petrolane could end up as a joint tortfeasor liable to the plaintiffs.*

In the instance of the Northwoods group, neglecting as to them the problem that the second amended complaint was filed *after* their cross-complaint was filed, they sought to meet this need by alleging "Cross-complainants hereby refer to and incorporate herein by this reference, without admitting any of the allegations thereof, the First Amended Complaint filed in this matter, a true and correct copy of which is attached to this cross-complaint, marked Exhibit '1', and incorporated herein by this reference. [¶] Cross-defendants, both those named in the amended complaint and those brought in by this cross-complaint, conducted themselves in the manner alleged in the complaint marked Exhibit '1', and the alleged causes of action therein contained, and those actions contributed to the injuries, if any, and to the damages, if any, sustained by plaintiffs." Harking back to the theory of plaintiffs' action against the Northwoods group, it is that the latter altered "the water[s] in such a manner as to concentrate it at a point immediately

adjacent to plaintiffs' property," thereby causing the damages suffered by the plaintiffs. In short, the cross-complaint alleged that Petrolane had altered the flow of waters draining from the shopping center so as to cause its concentration on plaintiffs' land.

As a consequence of the foregoing analysis, the critical issue of fact addressed by the motion for summary judgment by Petrolane as against the Northwoods group was whether the former had in any way contributed tortiously to the flooding of plaintiffs' land. If it had not, then it could never be a tortfeasor and hence never be required to participate in any liability of the other tortfeasors to the plaintiffs.

The Northwoods group's cross-complaint, using a kind of shotgun approach in its allegations, stated that Petrolane had conducted itself in the same manner as the defendants (cross-complainants) were alleged in the first amended complaint to have conducted themselves and that those actions contributed to the injuries and damages to the plaintiffs. Our task of analysis then requires that we sort through the first amended complaint[4] and try to find what allegations, if any, fit Petrolane's actual situation on the ground. Aside from the County of Riverside, the plaintiffs named in turn specifically identified developers and alleged that those developers in the construction of specifically identified tracts[5] consisting of single family residences and adjacent off-site improvements, had reduced the area available for absorption, with the result that the "natural flow of surface water from defendants' tract has been altered in such a manner as to concentrate said waters through drains and pipes, into a sandy bed, or swale, which in turn causes such unabsorbed surface waters to flow onto and across plaintiffs' land, carrying with it debris, mud and sand." Such allegations state further that "[t]his alteration of the natural surface, which previously had allowed the water to be absorbed and disbursed into other channels, has concentrated the runoff in such a manner as to cause plaintiffs' property to be flooded and uninhabitable."

Assuming for purposes of analysis that Petrolane's allegedly culpable circumstances in constructing a shopping center 1.5 miles distant from

---

[4] At oral argument all parties agreed, notwithstanding that a second amended complaint had been filed, that the motions for summary judgment were determined with reference to the first amended complaint.

[5] In the instance of the Northwoods group the tract referred to is Northwoods Mira Loma.

the plaintiffs' property can be extrapolated from the incorporated allegations above noted, what significance with reference thereto can be placed upon the declaration of Mr. Frink? That declaration consisted primarily of tracing, both by means of words and a map, the course which water draining from the shopping center would have to take to reach the plaintiffs' property. The key feature of this route, for purposes of our analysis, is a natural stream bed into which drainage from the shopping center flows well before any such drainage could reach plaintiffs' property.

At this juncture we note that Petrolane, in support of its motion for summary judgment, submitted portions of deposition testimony of the plaintiffs designed to show further that a natural stream bed crosses plaintiffs' property and that the bed of the stream is about 15 feet wide and traverses the plaintiffs' property for a distance of 275 feet.

These facts call into application a well settled principle of law found in the flooding cases. It is that an upper landowner who collects surface waters and discharges them into a natural watercourse, one into which such surface waters naturally drain, then the upper landowner is *not* liable to the lower landowner for any damages arising from the increased volume of water flowing in and along the natural watercourse. (*Archer* v. *City of Los Angeles* (1941) 19 Cal.2d 19 [119 P.2d 1].) As stated in *Archer*, "'We have just noticed the difference between merely draining on to another's land, and draining into a natural channel or watercourse, which flows across such land. So far as streams or natural watercourses are concerned, there can be no doubt that one can drain into them, and thereby increase their volume without subjecting himself to liability for any damage suffered by a lower owner.'" (*Id* at pp. 27-28, quoting from *San Gabriel Valley Country Club* v. *County of Los Angeles*, 182 Cal. 392, 402 [188 P. 554, 9 A.L.R. 1200].)

More recently in *Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276 [289 P.2d 1], the California Supreme Court stated, "Mere improvement within an existing watercourse which accelerates rather than diverts the flow does not give rise to a cause of action when damage results from an overflow. Straightening, widening or deepening the channel of a stream to improve the drainage or the collection of surface waters for discharge into their natural stream entails no diversion in the event of a resulting overflow. But to escape liability the improvements thus described must follow the natural drainage of the country or the natural stream." (*Id.* at p. 283.)

The uncontradicted facts, as set forth in the Frink declaration, are that any drainage runoff from the Petrolane shopping center reaching plaintiffs' property does so only through a natural watercourse. Moreover, the Stryker declaration filed by the Northwoods group offers nothing to contradict the representation that any drainage water originating on the Petrolane property and reaching the plaintiffs' property flows in and along the natural watercourse inscribed on the map attached to the Frink declaration. As a consequence, Petrolane clearly demonstrated, as to the Northwoods group, that it was entitled to summary judgment vis-a-vis the latter's cross-complaint for indemnity and contribution. We see it thusly, for on the facts alleged by the Northwoods group in their cross-complaint, by means of which they sought to have Petrolane characterized as a joint tortfeasor, there is no way, in light of the uncontradicted Frink declaration, that Petrolane could ever be held liable to the plaintiffs. We hold therefore that the trial court was correct in granting Petrolane's motion for summary judgment as against the Northwoods group.

Turning to Petrolane's motion as to the cross-complaint of the County of Riverside, it is enough to observe that the latter's cross-complaint wholly failed to allege any facts which, if proved, could subject Petrolane to any liability to the plaintiffs. All that was alleged is that plaintiffs' "damages were solely and/or substantially caused by the negligence and carelessness of the cross-defendants, and each of them...." Such allegation was made wholly without regard to any time, place, or type of conduct. As a consequence, the granting of Petrolane's motion for summary judgment as to the County of Riverside was correct and tantamount to granting a motion for judgment on the pleadings. (See *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393].)

In any event, even if the "negligence" referred to were to be extrapolated into the equivalent of that alleged in plaintiffs' first amended complaint, the same analysis and result would obtain as set forth above in connection with Petrolane's motion against the Northwoods group.

Before concluding, we must note and respond to an ingenious argument offered by the appealing cross-complainants. In effect they argue that the trial court could not have ruled in favor of Petrolane on the basis of the *Archer* case rule, for the trial court *denied* the cross-complainants' motions for summary judgment against the plaintiffs, offered upon the same theory. We have no way of knowing what led the trial

court to deny the motions for summary judgments made simultaneously against the plaintiffs by the Northwoods group and the County of Riverside; in any event those matters are not before us on this appeal.

Regardless, in our view, the trial court, for the reasons we have stated, reached the correct result as to the judgment appealed from. ■ Accordingly, we are constrained to refer to the language of *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], wherein our Supreme Court stated, "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Id.* at p. 19.)

Having said this, we hasten to observe further that there is nothing in the record to suggest that the trial court reached the decision it did for the wrong reasons. The rule of the *Archer* case was cited to the trial court by Petrolane, and so we have no reason to believe that the rule was not applied in deciding the two Petrolane motions.

DISPOSITION

The judgment is affirmed.

Kaufman, Acting P. J., and Morris, J., concurred.