[No. D002575. Fourth Dist., Div. One. Apr. 25, 1988.]

EKTELON et al., Plaintiffs and Appellants, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

**[Opinion certified for partial publication.¹]**

[1]Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section II.

**COUNSEL**

Jennings, Engstrand & Henrikson, Paul D. Engstrand, Gerard Smolin, Jr., and Gregory V. Moser for Plaintiffs and Appellants.

John W. Witt, City Attorney, Ronald L. Johnson Chief Deputy City Attorney, C. Alan Sumption, Deputy City Attorney, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Reeve J. Jacques, George E. Fleming, Gilson &

Heaton, Virginia R. Gilson and Roger L. Heaton for Defendants and Respondents.

## OPINION

**WORK, J.**—Several commercial property owners and tenants sued an upstream developer and the City of San Diego (City) for flood damages. The trial court granted nonsuit for the developer and as to part of the lawsuit against City, finding ordinary negligence principles do not govern upstream developments. The City obtained a defense judgment on all other issues. We find the court erred in granting the nonsuit based on its failure to recognize ordinary negligence principles govern an upstream landowner's construction of flood control structures. We reverse the judgment and remand for a new trial.

I

This appeal involves the continuing validity and interpretation of the rule enunciated in *Archer* v. *City of Los Angeles* (1941) 19 Cal.2d 19, 24-25 [119 P.2d 1], which formed the basis of the trial·court's granting motions for nonsuit on the issue of defendants' potential liability for flood damage to plaintiffs' properties. *Archer* holds a downstream owner of property has no right of redress for injury to land caused by improvements made in the watercourse by an upstream owner to protect upstream land, even though the channel is inadequate to accommodate the increased flow of water resulting from improvements. *Archer* states the construction of such improvements imposes no duty on the upstream owner to improve the outlet of the channel, and upstream owners cannot be held negligent for doing what they have a right to do, even if they know the outlet is inadequate and a different plan would prevent the damage. (*Id*. at pp. 23, 25-26.) However, the court limited its decisional liability-shield to cases where the improvements follow the natural drainage of the country, and do not divert water out of its natural channel into a different channel or neighboring land, nor obstruct the natural flow of waters. (*Id*. at pp. 26, 28.)[2]

The apparent rationale for *Archer*'s rule is a policy concern favoring development and the practicality of allowing upstream owners to use the means of drainage provided by nature. " 'Not to permit an upper land owner to protect his land against the stream would be in many instances to

---

[2]Straightening, widening, or deepening a channel to improve drainage does not entail diversion. Likewise, there is no diversion from the gathering of surface waters which flow in no defined channel and discharging them into the stream that is their natural means of drainage even though the stream is inadequate to accommodate the increased flow. (*Archer* v. *City of Los Angeles, supra,* 19 Cal.2d at p. 26.)

destroy the possibility of making the land available for improvement or settlement and condemn it to sterility and vacancy. Such a rule would seriously interfere with the development of the country. Because of this, and because of the necessity of permitting the utilization for drainage of the means afforded by nature for the purpose . . . a riparian owner has no right to complain because the volume of water in the stream is increased by artificially draining surface water into it above, provided only the stream is the natural drainage channel for the lands so drained.'" (*Archer* v. *City of Los Angeles, supra,* 19 Cal.2d at p. 27, quoting *San Gabriel Valley Country Club* v. *County of Los Angeles* (1920) 182 Cal. 392, 401-402 [188 P. 554, 9 A.L.R. 1200].)

*Archer's* rule was summarized in *Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 306-307 [90 Cal.Rptr. 345, 475 P.2d 441] as follows: "The doctrine of the common law 'right to inflict damage,' emanating from the complex and unique province of water law, has been employed in only a few restricted situations, generally for the purpose of permitting a landowner to take reasonable action to protect his own property from external hazards such as floodwaters. [Citations.] In some ways the language of the 'right to inflict damage' projects a misleading concept, because the essential common characteristic of this category of cases is not that they all involve the infliction of injury on others, but rather that they all involve injury resulting from the landowner's efforts to protect his own property from damage. In recognition of the generally perceived reasonableness of such action and, as a policy matter, to encourage protective measures to preserve land resources, certain types of protective measures were cloaked in a legal 'privilege.' [Citations.]" (Fns. omitted.)

However, the *Archer* exception does not necessarily remove a requirement the flood protection measures be done reasonably and nonnegligently: "It must be noted, however, that the 'privilege' recognized by the *Archer* exception is not necessarily an 'absolute privilege,' but in many instances is only a 'conditional' one. Thus, for example, even when a public agency is engaged in such 'privileged activity' as the construction of barriers to protect against floodwaters, it must act reasonably and non-negligently. (See *Bauer* v. *Ventura County* (1955) 45 Cal.2d 276, 285-286 [289 P.2d 1]; *House* v. *Los Angeles Flood Control Dist.* (1944) 25 Cal.2d 384, 395-396 [153 P.2d 950]; *San Gabriel Valley Country Club* v. *County of Los Angeles* (1920) 182 Cal. 392, 399-400 [188 P. 554, 9 A.L.R. 1200]; *Granone* v. *County of Los Angeles* (1965) 231 Cal.App.2d 629, 647 [42 Cal.Rptr. 34].)" (*Holtz* v. *Superior Court, supra,* 3 Cal.3d at p. 307, fn. 12.)

*Holtz's* footnote suggests *Archer* should not be read to eliminate a reasonableness requirement on the construction of upstream improvements.

■■■■ This dicta in *Holtz* was foreshadowed by an express holding in *Keys* v. *Romley* (1966) 64 Cal.2d 396 [50 Cal.Rptr. 273, 412 P.2d 529], following a review of the development of the law governing surface waters.[3] *Keys* notes the rule in California has been that an upper landowner was entitled to discharge surface waters from his land as the water naturally flows, but was liable for damage caused by the discharge in an unnatural manner, i.e., each owner's duty was to leave the natural flow of surface water undisturbed. (*Id.* at pp. 405-406.) *Keys* v. *Romley, supra,* at page 409, modified the rule, however, by inserting a requirement of reasonableness, holding that: "No party, whether an upper or a lower landowner, may act arbitrarily and unreasonably in his relations with other landowners and still be immunized from all liability.

"It is therefore incumbent upon every person to take reasonable care in using his property to avoid injury to adjacent property through the flow of surface waters. Failure to exercise reasonable care may result in liability by an upper to a lower landowner. It is equally the duty of any person threatened with injury to his property by the flow of surface waters to take reasonable precautions to avoid or reduce any actual or potential injury.

"If the actions of both the upper and lower landowners are reasonable, necessary, and generally in accord with the foregoing, then the injury must necessarily be borne by the upper landowner who changes a natural system of drainage, in accordance with our traditional civil law rule."

The facts in the *Keys* case, unlike here, involved surface waters (rather than a natural watercourse) and an upper landowner changing the natural system of drainage. However, the court in *Keys,* after an extensive review of water law, postulated a broad rule of reasonableness to be applied to all factual situations, and which should properly be used to modify its holding in *Archer.* (See *Ellison* v. *City of San Buenaventura* (1976) 60 Cal.App.3d 453, 458 [131 Cal.Rptr. 433] [court assumes, arguendo, the rule of reasonable use applies to both surface waters and natural water courses].)

■■■ Similarly, the recent case of *Linvill* v. *Perello* (1987) 189 Cal.App.3d 195 [234 Cal.Rptr. 392], expressly rejects a rule that upstream flood control improvements are not subject to the principles of ordinary negligence. (See also *Tahan* v. *Thomas* (1970) 7 Cal.App.3d 78, 81-82 [86 Cal.Rptr. 440]; but see contra, *Deckert* v. *County of Riverside* (1981) 115 Cal.App.3d 885, 895-897 [171 Cal.Rptr. 865].) *Linvill* reversed a summary judgment for upstream owners whose levee allegedly caused damage by

---

[3] "Surface water" is water diffused over the surface of land, or contained in depressions therein, and resulting from rain, snow, or which rises to the surface in springs. It is distinguishable from water flowing in a fixed channel, so as to constitute a watercourse, or water collected in an indentifiable body, such as a river or lake. (*Keys* v. *Romley, supra,* 64 Cal.2d at p. 400.)

diverting floodwaters. The upstream owners contended it is reasonable as a matter of law to erect defensive measures against floodwaters on one's land, so long as there is no interference with the natural channel of the stream, and no diversion of the natural flow of water in the natural channel. (*Id.* at p. 198.) This exact statement of the *Archer* rule was rejected in *Linvill* which holds a property owner must act reasonably under all the circumstances when building barriers to protect his property from damage by floodwaters. (*Id.* at pp. 197, 198.)

*Linvill* relies on the fundamental principle of tort law that everyone is responsible for an injury occasioned by his want of ordinary care or skill in the management of his property or person, and in the absence of a statutory provision declaring an exception to this fundamental principle, no exception should be made unless clearly supported by public policy. (*Id.* at p. 198, citing Civ. Code, § 1714, *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], and *Sprecher* v. *Adamson Companies* (1981) 30 Cal.3d 358, 363 [178 Cal.Rptr. 783, 636 P.2d 1121].) *Linvill* rejects the argument an exception to ordinary negligence rules should be made when the artificial condition is created and maintained to divert floodwaters, reasoning the distinction between conditions created to divert floodwater and conditions created for other purposes bears little relationship to the factors set forth in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, which determine whether immunity should be given to a landowner. It is a question of fact whether a landowner has acted reasonably, to be resolved in each case by considering all the circumstances, including such factors as the gravity and foreseeability of the harm, the utility of the conduct, and the purpose or motive with which the landowner acted. (*Linvill* v. *Perello, supra,* 189 Cal.App.3d at p. 199, citing *Keys* v. *Romley, supra,* 64 Cal.2d at p. 410.)

*Linvill* v. *Perello, supra,* 189 Cal.App.3d at page 199, finds no merit in the argument that an exception for conditions created to divert floodwaters is necessary for the development and improvement of lands along low-lying river bottoms. This is indeed the very policy ground upon which the *Archer* rule is based. *Linvill* posits the rule of reasonable conduct, which weighs the utility of the possessor's use of the land with the gravity of harm caused to determine who should bear the costs of diverting the floodwaters, is not inconsistent with the legitimate concerns for land development.

*Linvill* does not refer to *Archer,* but rejects its holding as restated in *Clement* v. *State Reclamation Board* (1950) 35 Cal.2d 628 [220 P.2d 897].[4]

---

[4]The court in *Clement* reiterated the *Archer* rule, but found the peculiar facts before it raised the possibility the floodwater improvements may have diverted the water from its course, thus allowing liability. *Clement* holds the trial court erroneously failed to characterize levees in existence for 62 years as creating the equivalent of the natural watercourse. The

*Linvill* v. *Perello, supra* 189 Cal.App.3d at page 200, summarily dispenses with the argument that *Clement*'s failure to define a standard of reasonableness should be controlling: "Mere silence on the part of our Supreme Court in a case decided 18 years before *Rowland* v. *Christian* is not sufficient to persuade us, in light of the court's decisions in *Rowland* and *Sprecher* v. *Adamson Companies,* that respondents' restricted view of the requirement of reasonableness is correct."

We agree with the analysis in *Linvill.* An upstream landowner has no absolute right to protect his land from floodwaters by constructing structures which increase the downstream flow of water into its natural watercourse, but is instead governed by the ordinary principles of negligence.

■ There are two defendants involved in this appeal. The liability of the private developer, Terrance Caster, who planned and constructed the flooded properties and the upstream improvements, is defined by negligence principles. However, City's liability is governed by specific rules applicable to public entities. "[A]ll common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g. inverse condemnation" have been abolished, and public entities may be held liable only as provided by statute. (Legis. Com. com., 32 West's Ann. Gov. Code (1980 ed.) § 815, p. 168; Deering's Ann. Gov. Code (1982 ed.) § 815, p. 134.) City's alleged liability is premised on a dangerous condition of government property (Gov. Code, § 835), nuisance (Civ. Code, § 3479), and inverse condemnation (Cal. Const., art. I, § 19). In any event, based on *Linvill,* we hold the City's liability for the upstream developments is not restricted by case law which formerly treated such improvements differently from other conditions created on land.

## II*

. . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed.

Wiener, Acting P. J., and Todd, J., concurred.

Respondents' petitions for review by the Supreme Court were denied July 20, 1988.

---

case was remanded for retrial of the issue of whether the government was liable for modifying the levees and constructing new flood control structures, if the result was to divert the water from the course it had taken during the 62 years the levees were maintained in their original condition. (*Clement* v. *State Reclamation Board, supra,* 35 Cal.2d at pp. 637-638, 642.)

 * See footnote, *ante,* page 804.