Filed 12/12/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MATTHEW VANN,<br><br>  Plaintiff and Appellant,<br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>  Defendants and Respondents. | A165231<br><br>(San Francisco County<br>Super. Ct. No. CGC21596140) |

   Plaintiff and appellant Matthew Vann (appellant), a firefighter with the San Francisco Fire Department (SFFD), was injured when Louis Yu (Yu), a bus driver with the San Francisco Municipal Transportation Agency (SFMTA), drove through an active emergency scene and over a fire hose, which broke off from a fire engine and struck appellant. He now appeals from a judgment of dismissal entered in favor of defendants and respondents City and County of San Francisco (City) and Yu after the trial court sustained their demurrer to the complaint without leave to amend on the basis that the action was barred by the exclusivity provisions of the Workers' Compensation Act (Lab. Code, § 3200 et seq.).[1]  We affirm.

---

[1] Further undesignated statutory references are to the Labor Code.

1

# BACKGROUND

## The Facts and the General Setting[2]

On November 2, 2020, appellant, a firefighter with the SFFD, responded to an emergency on Spear Street between Market Street and Mission Street in the City and County of San Francisco. Yu, a bus driver with the SFMTA, then drove a bus through the location of the active emergency. The bus went over a firehose, which became entangled with the bus's wheels and stretched until it broke off the fire engine it was attached to. When the firehose broke away, it hit appellant's legs, sweeping him off his feet and causing him to slam backwards onto the ground. His helmet flew off, and the back of his head struck the street surface. As a result, appellant sustained catastrophic injuries, including a traumatic brain injury, a fractured left clavicle, an internal hemorrhage in his right eye, and damage to his throat and vocal chords.

---

[2] Our summary of facts is based upon the allegations in appellant's complaint, which we accept as true if properly pled. (*Amiodarone Cases* (2022) 84 Cal.App.5th 1091, 1100 (*Amiodarone Cases*).) We also rely on matters that are the subject of judicial notice (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*)), which, as pertinent here, include the City's notice of payment of workers' compensation benefits to appellant, his government tort claim presented to the City, and the City's denial of the claim. In the trial court, the parties filed separate, unopposed requests to take judicial notice of these and other documents, including: provisions of the Charter of the City and County of San Francisco ("City Charter"); the ballot pamphlet for Proposition E, which was approved by City voters in 1999 and created the SFMTA (S.F. Voter Information Pamp. (Nov. 2, 1999) ("Prop. E. Pamphlet"); and the ballot pamphlet for Proposition A, which was approved by City voters in 2007 and expanded SFMTA's authority over its operations and additional funding (S.F. Voter Information Pamp. (Nov. 6, 2007). The trial court did not rule on these requests. The parties then filed in this court requests for judicial notice of the same materials for which they sought judicial notice below, which requests we granted.

On November 4, the City sent appellant a "Notice Regarding Disability Pay/Labor Code section 4850 benefits." The notice stated that the "City and County of San Francisco is handling [appellant's] workers' compensation claim on behalf of SF Fire Dept.," and that he was receiving workers' compensation benefits for the injuries he sustained in the November 2, 2020 incident.

On August 18, 2021, appellant submitted an application for leave to present a late government tort claim to the City pursuant to Government Code section 910 et seq., along with the proposed claim. In the application, appellant asserted that he is a "City and County San Francisco[] firefighter"; that he was "discharging his duties as a firefighter *for the City and County of San Francisco*" when responding to the emergency call in November 2020; and that "the City and County of San Francisco has been on notice of the illegal conduct of *its* Muni Bus driver, Yu." (Italics added.) And on the claim form, he wrote in Yu's name where it asked to identify the name and "City Department of *City Employee* who allegedly caused injury or loss." (Italics added.)

On August 31, the City granted appellant leave to present a late claim, but denied the claim.

**The Proceedings Below**

On November 8, appellant filed a form complaint against the City and Yu (when referred to collectively, respondents), alleging causes of action for motor vehicle negligence, general negligence, and negligence per se. The complaint is sparse on detail: it alleges "Defendants negligently operated an SF Muni Coach 8800," before briefly describing how the incident caused appellant's injuries, and also alleges "Defendants violated [Vehicle Code sections 21707 and 21708]."

3

On February 2, 2022, respondents filed a demurrer on various grounds, including that the Workers' Compensation Act (§ 3200 et seq.) provides the exclusive remedy for appellant's claims against the City as his employer (§§ 3600, subd. (a), 3602, subd. (a)), and against Yu as his coemployee (§ 3601, subd. (a)). As such, respondents argued, the trial court lacked subject jurisdiction over this action.

Appellant opposed the demurrer, arguing that workers' compensation is not his sole remedy. As to Yu, appellant asserted he and Yu were not coemployees because (1) appellant was employed by SFFD, while Yu was employed by SFMTA, and (2) SFFD and SFMTA are separate legal entities akin to separate businesses within a multiunit corporate enterprise. As to the City, appellant argued there were no facts at that procedural juncture to support the conclusion that the City, as opposed to SFFD, was his employer as a matter of law.

Respondents filed their reply, arguing appellant's assertion "that neither he nor Mr. Yu is a City employee is untenable as a matter of law," because SFFD and SFMTA, as municipal departments, "have no 'legal personality separate from' the City." In addition, citing *Walker v. City and County of San Francisco* (1950) 97 Cal.App.2d 901 (*Walker*) and *Colombo v. State of California* (1991) 3 Cal.App.4th 594 (*Colombo*), respondents contended that California courts have rejected appellant's theory that government departments are akin to separate business entities and can thus be subdivided into different entities for purposes of the workers' compensation law. Thus, respondents maintained that appellant and Yu share the same employer—the City. Respondents separately asserted that City Charter provisions establish that the City employed both appellant and Yu.

4

On March 23, after holding a hearing, the trial court issued an order sustaining the demurrer to the complaint without leave to amend. Relying on *Walker* and *Colombo*, the court was unpersuaded by appellant's attempt to draw an analogy between SFMTA and SFFD as two separate corporate entities within a large corporation. Instead, the court determined: "In 1999, the City's municipal transportation agency was formed to, inter alia, operate the City's street cars and buses. However, that agency, along with the City's fire department, remains part of 'a single governmental entity'—the City." And the court held, "[appellant] is receiving workers' compensation and the City correctly asserts that is his sole remedy."

Judgment was entered in favor of respondents.

This appeal followed.

## DISCUSSION

### The Standard of Review

As we explained in *Amiodarone Cases*: "Our standard of review is well-established. We accept as true the well-pleaded allegations in the operative complaint. (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 480.) ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' " [Citation.] We likewise accept facts that are reasonably implied or may be inferred from the complaint's express allegations. [Citations.] ' " ' "A demurrer tests the legal sufficiency of the complaint . . . ." [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the

5

complaint states a cause of action as a matter of law. [Citations.]' " ' (*Ibid*.)

"Although our review is de novo, it is plaintiffs' burden to affirmatively demonstrate that the demurrer was erroneously sustained as a matter of law . . . . (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.)" (*Amiodarone Cases*, *supra,* 84 Cal.App.5th at pp. 1100–1101.)

Further, our Supreme Court has stated that when a complaint "is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank*, *supra*, 39 Cal.3d at p. 318.) "[T]he burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 (*Goodman*).)

**The Workers' Compensation Exclusive Remedy Rule**

Section 3600, subdivision (a) provides that, with exceptions not relevant here, an employer's liability to pay compensation under the Workers' Compensation Act is "in lieu of any other liability whatsoever" if specified "conditions of compensation[3] concur . . . ." (§ 3600, subd. (a); *Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1006.) So, when the statutory conditions for recovery are met, the employer is immune from civil damages liability for on-the-job injuries because workers' compensation is the injured

---

[3] There are 10 conditions of compensation, two of which are relevant here: "Where, at the time of injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment" (§ 3600, subd. (a)(2)), and "[w]here the injury is proximately caused by the employment, either with or without negligence." (*Id.*, subd. (a)(3).)

employee's "exclusive remedy." (§§ 3600, 3601, 3602, subd. (a).)

A parallel exclusive remedy provision is section 3601, subdivision (a), which "prohibits actions against coemployees for injuries they cause when [acting within the scope of their employment.]" (*Hendy v. Losse* (1991) 54 Cal.3d 723, 730.) "To prevent employees from circumventing the exclusivity rule by bringing lawsuits for work-related injuries against co-employees, who in turn would seek indemnity from their employers, the Legislature . . . provided immunity to co-employees acting within the scope of their employment. (§ 3601, subd. (a) . . . . ) In other words, the purpose of the exclusivity rule would be defeated if employees could bring actions against fellow employees acting in the scope of employment such that the fellow employees' negligence could be imputed to their employers. [Citation.] Therefore, workers' compensation was also made the exclusive remedy against fellow employees acting within the scope of employment." (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1002 (*Torres*).) In short, "[f]or conduct committed within the scope of employment, employees, like their employers, should not be held subject to suit." (*Ibid.*)

"The Workers' Compensation Act is to be liberally construed in favor of awarding workers' compensation benefits. (§ 3202; *King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1051.) 'The rule is not altered because a plaintiff believes that he can establish negligence on the part of his employer and brings a civil suit for damages.' (*Freire v. Matson Navigation Co.* (1941) 19 Cal.2d 8, 10.)" (*Reynaud v. Technicolor Creative Services USA, Inc.* (2020) 46 Cal.App.5th 1007, 1020.) "If the injury falls within the scope of the act, a proceeding thereunder constitutes his exclusive remedy." (*Freire v. Matson Navigation Co., supra*, 19 Cal.2d at p. 10.)

The exclusive remedy rule is an affirmative defense to an action at law.

(See *Doney v. Tambouratgis* (1979) 23 Cal.3d 91, 96.) "[W]here the complaint affirmatively alleges facts indicating coverage by the workers' compensation laws, if it fails to state additional facts negating application of the exclusive remedy provision, no civil action will lie and the complaint is subject to a general demurrer." (*Roberts v. Pup 'N' Taco Driveup* (1984) 160 Cal.App.3d 278, 284, citing *Doney v. Tambouratgis*, *supra*, 23 Cal.3d at p. 97 and *Iverson v. Atlas Pacific Engineering* (1983) 143 Cal.App.3d 219, 224.)

**The Trial Court Properly Sustained the Demurrer to the Complaint Without Leave to Amend**

### *Introduction*

Appellant reasserts that workers' compensation is not his exclusive remedy based on the same theories he asserted below. He presents these arguments in his opening brief under two main subheadings: (1) "[Appellant] and Defendant Yu Are Not Co-Employees Because They Are Employed by Different Entities: the San Francisco Fire Department and the San Francisco Municipal Transportation Agency," and (2) "Nor Can It Be Said That as a Matter of Law, [Appellant] Is Employed by the City and County of San Francisco."

Appellant's arguments treat the City, SFMTA, and SFFD as three separate legal entities. His position presupposes that for purposes of a lawsuit for damages, a municipal department can and does possess a legal identity separate and apart from the municipality by which it was created. However, appellant does not present any argument in his opening brief to support this premise.

This omission is curious, considering that respondents and the trial court treated the issue of whether SFFD and SFMTA are entities independent from the City as significant to the overarching question of whether workers' compensation is appellant's exclusive remedy. Specifically,

8

respondents summarily argued below that appellant's attempts to divide SFMTA and SFFD, and SFFD and the City, for workers' compensation purposes fail, because SFFD and SFMTA have no legal existence separate from the City. The trial court agreed with this, finding that SFMTA and SFFD "remain[ ] part of 'a single governmental entity'—the City," before concluding workers' compensation is appellant's sole remedy. We imply from the court's order that its reasoning was this: If SFMTA and SFFD have no legal existence separate from the City, then they are merely two subsidiary components of the same entity, the City. The conclusion that would follow is that the City employs both appellant and Yu. In turn, appellant's theory that SFMTA and SFFD are separate employers for purposes of the workers' compensation exclusivity rule would fail. Likewise, his argument that SFFD, as opposed to the City, is his employer.

It is not until his reply brief that appellant raises the argument that SFMTA "has a legal existence independent of the City," an assertion based largely on a statutory interpretation analysis—namely of the City Charter and other legislative materials—which appellant argues support that SFMTA was "plainly intended" to have a separate legal existence.[4] Even considering the arguments in appellant's reply brief, he fails to persuade us that the trial court erred in sustaining the demurrer to his complaint without leave to

---

[4] Taken as a whole, appellant's reply brief reads like a new opening brief. His opening brief is 40 pages, and much of it appears to be a nearly verbatim rehash of the opposition he filed below. In contrast, his reply brief is 58 pages, which, as noted, consists largely of a statutory interpretation analysis, and discusses a number of authorities not mentioned in his opening brief. Perhaps appellant might have believed that he did not need to raise the issue of whether SFMTA is independent of the City until it appeared in the respondents' brief. However, we would not find such a belief justified, given that the issue is key, as explained above.

amend.

*Analysis*

We begin by addressing whether SFMTA and SFFD each has a legal existence independent of the City, an issue we find significant to the fundamental question of whether workers' compensation is appellant's exclusive remedy.

As noted, respondents assert that both SFMTA and SFFD have no legal existence independent of the City. In his reply brief, appellant disputes respondents' assertion as to SFMTA, but raises no such challenge as to SFFD. Indeed, appellant agrees with respondents that SFFD is part of the City's executive branch. (S.F. Charter, §§ 4.108, 4.128.) As such, we take this as appellant's concession that SFFD is not a legal entity separate from the City.[5]

Turning to whether SFMTA is independent from the City, the parties refer us to a number of authorities for guidance on the issue. One of those is Government Code section 945, which provides that "[a] public entity may sue and be sued." (Gov. Code, § 945.) "Public entity" is defined to include "the state . . . , a county, city, district, . . . public agency, and any other political subdivision or public corporation in the State." (Gov. Code, § 811.2.) However, the California Law Revision Commission's comments to Government Code section 811.2 state that "[t]his definition [of 'public entity'] is intended to include every kind of *independent* political or governmental entity in the State." (Recommendation Relating to Sovereign Immunity (Jan. 1963) Cal. Law Revision Com. com., Gov. Code, § 811.2, 1 Cal. Law Revision

---

[5] Based on this, as explained below, we reject appellant's argument that SFFD, as opposed to the City, is his employer for purposes of the workers' compensation laws.

10

Com. Rep. (1963) p. 836, italics added.)

*Bauer v. County of Ventura* (1955) 45 Cal.2d 276, 288–289 (*Bauer*), which both parties cite, is instructive on whether a public entity is independent or a subsidiary of another entity. In *Bauer*, the plaintiffs sued Ventura County (county), the Saticoy Storm Drain Maintenance District (district), and individual members of the County of Board of Supervisors for damage to the plaintiff's property resulting from the overflow of water from the County's and District's storm drain system. (*Bauer*, at pp. 281–282.) The trial court entered a judgment of dismissal after it sustained demurrers from the defendants, and the Supreme Court ultimately affirmed the judgment. (*Id.* at pp. 282, 291–292.) Among other things, the court held the district was improperly joined as a party defendant. (*Id.* at p. 289.) It rejected the "assumption that the district is a governmental agency separate and distinct from the county," reasoning as follows:

"A reading of the Storm Drain Maintenance District Act [(Stats. 1937, ch. 265, p. 566, as amended by Stats. 1949, ch. 496, p. 854, and Stats. 1953, ch. 546, § 1, p. 1805)] supports the conclusion that the district is a unit created for purposes of taxes and administration. The operational powers of the district are vested in the county board of supervisors and other county officers. The board creates and governs the district (§ 1), and has power to enter into contracts for the district, make rules and regulations and do all things necessary to accomplish the purposes of the act (§ 5). The board of supervisors is given power to acquire and dispose of property for the district but only in the name of the county (§ 5). Taxes are levied by the board of supervisors but they must be levied and collected at the same time and manner as general county taxes; and when collected are paid into the county treasury to the credit of the district and may be used only for district

purposes (§ 7).  Storm drain maintenance districts created pursuant to the act are not given the power to sue and be sued; nor are they created as independent public corporations.

"In other acts dealing with water control problems the Legislature made clear provision for the creation of state instrumentalities with separate legal personalities.  (See acts collected in 1 Water Code, Uncodified Acts.)  The Ventura County Flood Control Act (1 Water Code, Uncodified Acts, No. 8955, p. 899 et seq.), for example, provides that the 'Ventura County Flood Control District is hereby declared to be a body corporate and politic,' and the district's powers include:  perpetual succession, the power to sue and be sued, to take title to real and personal property, to incur indebtedness and issue bonds, to levy taxes, to make contracts and to employ labor (§ 7).  The Storm Drain Maintenance District Act, on the other hand, vests the defendant district's much less extensive powers in the county board of supervisors rather than in the district itself.  Neither the legislative intention nor the stated purposes of the Storm Drain Maintenance District Act requires the districts created pursuant thereto to enjoy a legal personality separate from the county.  (See *Anaheim Sugar Co. v. County of Orange* [(1919)] 181 Cal. 212 [(*Anaheim Sugar Co.*)]; *Mortimer v. Acquisition & Imp. Dist. No. 36* [(1951)] 105 Cal.App.2d 298; *Mortimer v. Acquisition & Imp. Dist. No. 36* [(1947)] 79 Cal.App.2d 404.)  It therefore seems clear that the Saticoy Storm Drain Maintenance District was improperly joined as a party defendant."  (*Bauer*, *supra*, 45 Cal.2d at pp. 288–289.)

As *Bauer* illustrates, if an entity is not independent, it is not properly named as a defendant.  (*Bauer*, *supra*, 45 Cal.2d at pp. 288–289; accord, *Sheehan v. Board of Police Commissioners* (1922) 188 Cal. 525, 532, disapproved on other grounds in *Mass v. Board of Ed. of San Francisco*

12

*Unified School Dist.* (1964) 61 Cal.2d 612 [Board of Police Commissioners "has no separate existence" from the City and County of San Francisco and "is incapable of being sued"]; *Talbot v. City of Pasadena* (1938) 28 Cal.App.2d 271, 274, disapproved of on other grounds in *Dillon v. Board of Pension Commissioners of City of Los Angeles* (1941) 18 Cal.2d 427, 431 [citing *Sheehan* and reaching the same conclusion as to the fire and retirement boards of the City of Pasadena].)  If an entity is a subsidiary, an action must be filed against the parent entity.  (1 Cal. Governmental Tort Liability Practice (Cont.Ed.Bar 4th ed. Cal. 2023) (Governmental Tort Liability Practice) § 3.4, citing *Hovd v. Hayward Unified School Dist.* (1977) 74 Cal.App.3d 470, 471–472 [holding that a vocational skills center which was a subdivision of school district was not independent unit of local school district although operating under fictitious business name and conducting business away from school district's premises].)

Factors that may be considered in determining if an entity is independent include whether there is "[a]n express statutory declaration that the entity is a body corporate and politic"; whether the entity has "[a] governing body separate from that of the city, county, or district"; or whether it has "[s]tatutory power to own property, levy taxes, or incur indebtedness in its own name." (Governmental Tort Liability Practice, *supra*, § 3.5, citing *Bauer*, *supra*, 45 Cal.2d at pp. 288–289; *Johnson v. Fontana County Fire Protection Dist.* (1940) 15 Cal.2d 380, 385–387; *Elliott v. County of Los Angeles* (1920) 183 Cal. 472, 474–475; *Anaheim Sugar Co.*, *supra*, 181 Cal. at pp. 217–220.)

Contrary to appellant's assertions, our review of the City Charter, City municipal codes, and other legislative materials leads us to conclude, as a matter of law, that SFMTA does *not* have a legal existence separate and

apart from the City.

Appellant does not point us to any "express statutory declaration that [SFMTA] is a body corporate and politic." (*Bauer, supra*, 45 Cal.2d at pp. 288–289.) To the contrary, SFMTA is described throughout the City Charter and other municipal codes as an agency that is a part of the City. (See, e.g., S.F. Charter, § 8A.102(h) [SFMTA "shall be subject to the provisions of this Charter applicable to boards, commissions, and departments of the City and County"]; S.F. Admin. Code, § 43.13.2 [under article pertaining to the SFMTA revenue bond law, SFMTA is defined as "San Francisco Municipal Transportation Agency *of the City*" (italics added)]; *id.*, § 22E.1 ["A number of *City departments* control fiber-optic facilities that they use to provide municipal and other services. . . . *[T]hese departments include the Municipal Transportation Agency . . .*" (italics added)]; *id*, § 94A.2 [for purposes of the San Francisco Shared Spaces Program, " 'Core City Agencies' are the *City departments and agencies* participating in the . . . Program: . . . *Municipal Transportation Agency*" (italics added)]; see also S.F. Environment Code, § 701 [for purposes of municipal green building requirements, " 'City Department' means any agency of the City and County of San Francisco. Any other local, state, or federal agency doing business in San Francisco is *not* a City Department, such as the San Francisco Unified School District, the San Francisco Community College District, the Office of Community Investment and Infrastructure, and the San Francisco Housing Authority"; SFMTA not listed (italics added)].)

As to its governance, although appellant correctly notes that SFMTA is governed by its own board of directors, those directors must be appointed by the Mayor (the chief executive officer and the official representative of the City) and confirmed by the Board of Supervisors (the legislative branch of the

14

City) after a public hearing.  (S.F. Charter, §§ 2.100, 3.100, 8A.102(a).)

Additionally, appellant omits mentioning Article VIIIA of the City Charter,

which states:  "this Article is intended to ensure sufficient *oversight* of

[SFMTA] by, among other things, preserving the role of the City's Controller

as to financial matters, the City Attorney as to legal matters, and the Civil

Service Commission, as to merit system issues."  (S.F. Charter, § 8A.100€,

italics added.)  These provisions confirm that SFMTA does not have a

governing body separate from that of the City.

In addition, the fact that SFMTA's funding is segregated from other

City funds (S.F. Charter, § 8A.105(a), (b)) does not mean it is "fiscally

separate" from the City, as appellant asserts.  (See *Anaheim Sugar Co.*,

*supra*, 181 Cal. p. 219 ["It is true that the money collected by means of the

tax provided for in the statute is to be paid into the county treasury 'for the

use' of the [road] division [of Orange County]. . . .  This, however, is nothing

more than a provision that the money so paid shall constitute a special fund

for a special purpose.  The existence of such a fund does not necessarily imply

the existence of a corporate entity separate and distinct from the county as

beneficiary . . ."].)  Also undermining appellant's assertion that SFMTA is

"fiscally separate" are City Charter provisions stating that SFMTA "may not

exercise any powers and duties of the Controller" (S.F. Charter, § 8A.101(f))

and that it must submit a proposed budget every two years for review and

consideration by the Mayor and the Board of Supervisors.  (S.F. Charter, §

8A.106(a), (b).)

While SFMTA does have exclusive authority power to acquire control,

and operate property under its jurisdiction, including real and personal

property and financial assets, as well as over contracting, leasing, and

purchasing (S.F. Charter, § 8A.102(b)(1)), it cannot transfer or dispose any

15

property of the City without approval from the Board of Supervisors. (*Ibid*.) Moreover, SFMTA may not incur any debt or issue bonds for SFMTA purposes without the concurrence of the Board of Supervisors. (S.F. Charter, § 8A.102(b)(13).) And it may not incur debt on behalf of the City without certification from the Controller and authorization from the Board of Supervisors. (*Ibid*.)

As for legal affairs, the City Charter provides that "[t]he City and County may appear, sue and defend in all courts in all matters and proceedings." (S.F. Charter, § 1.101.) There is not a similar, express provision as to the SFMTA. Although appellant correctly notes that SFMTA "is empowered to approve compromises, settlements, or dismissals of 'any litigation, legal proceedings, claims, demands or grievances," he omits mentioning that this authority is subject to that of the City Attorney, whose recommendation is required prior to any such compromise, settlement, or dismissal. (S.F. Charter, § 8A.102(e).) Indeed, the City Charter provides that SFMTA may not "exercise any power and duties of the . . . City Attorney" and "shall contract with . . . the City Attorney" for legal matters. (S.F. Charter, § 8A.101(f).)

Appellant notes that SFMTA is afforded its own personnel/labor relations office, and assumes powers of the Department of Human Resources with respect to "service-critical" employees, defined to include those who operate, dispatch, or maintain a transit vehicle. (S.F. Charter, § 8A.104(a)–(e).) However, the City's Department of Human Resources maintains authority over all other types of employees. (S.F. Charter, § 8A.104(c).)

Based on all of the above, we reject appellant's assertion that SFMTA was "plainly intended" to exist independently of the City. While SFMTA undoubtedly enjoys autonomy over various aspects of its operations, in other

16

significant areas it still must collaborate with, or answer to, other departments of the City and its elected officials.  SFMTA is simply a part of, and subordinate to, the City it serves.

We are not persuaded otherwise by appellant's citations to the ballot pamphlet for Proposition E, which, adopted by City voters in 1999, combined the San Francisco Municipal Railway and the Department of Parking and Traffic under a single new entity:  SFMTA. (S.F. Charter, § 8A.101(a); Prop. E. Pamphlet, *supra*, Digest by Ballot Simplification Committee, p. 81.) Appellant relies on the paid arguments of certain proponents in favor of the proposition.  For example, the San Francisco Chamber of Commerce stated that "Prop E provides the comprehensive change needed to give Muni management the authority to make decisions, implement reforms and operate the system *without the interference of City Hall politics*." (Prop. E. Pamphlet, *supra*, p. 84, italics added.)  The Building Owners and Managers Association of San Francisco stated that Proposition E would "give[] MUNI the resources and *operational control* it must have . . . ." (*Id.* at p. 85, italics added.)  The original sponsors of the Muni Reform charter amendment argued that Proposition E "give Muni the tools it needs to deliver service [under specific standards] by establishing an *autonomous* Transportation Agency with a protected budget." (*Id.* at p. 89, italics added.)  Also, the San Francisco Democratic Party stated that the Proposition E would "create an effective and reliable transit system" "[b]y establishing an *independent*, fully-funded Municipal Railway under a new Municipal Transportation Agency." (*Ibid.*, italics added.)

We agree with appellant the above excerpts show that Proposition E intended to give SFMTA greater authority than its predecessor departments over transit in the City.  (See S.F. Charter, § 8A.100(a) & (d).)  But we

17

disagree that because SFMTA is afforded some operational autonomy, this means it was intended to exist independently of the City. Rather, as discussed, SFMTA functions as a mere instrumentality or subsidiary of the City it serves.[6]

Appellant's reliance on *McKee v. Los Angeles Interagency Metropolitan Police Apprehension Crime Task Force* (2005) 134 Cal.App.4th 354 (*McKee*) is misplaced. In *McKee*, the court held an intergovernmental crime-fighting task force was a "local agency" and its board of directors and executive council were "legislative bodies" as defined by the Ralph M. Brown Act (Gov. Code, § 54950 et seq.), making them subject to the requirement that their meetings be public. (*McKee, supra*, at pp. 357–364.) The agreement creating L.A. Impact, the crime-fighting task force in question, specified that the parties intended to create a separate entity. (*Id.* at p. 359.) L.A. Impact was "governed by a board of directors and executive council, with operations conducted under a separate command structure." (*Id.* at p. 360.) It was a "fiscally separate entity" with a $9 million operating budget, funded "through public grants routed through member cities, through contributions of personnel and equipment contributed by member cities, and primarily through the division of the proceeds of seized assets. . . ." (*Ibid.*) It was

---

[6] Other courts have reached the same conclusion. (E.g., *Cornejo v. Tumlin* (N.D.Cal. Oct. 20, 2021, Case No. 20-cv-05813) 2021 WL 4893392 *2 ["Although the Complaint names SFMTA as a defendant . . . , CCSF argues that SFMTA is not an independent public corporation with the power to sue or be sued. . . . The Court agrees. . . . SFMTA is not a proper defendant in this case and is therefore dismissed"]; *King v. City and County of San Francisco* (N.D.Cal. July 22, 2021, Case No. 21-cv-02843) 2021 WL 3111633, at *1, fn. 1 ["King brought this action against CCSF [and] [SFMTA] . . . . SFMTA, as a department of CCSF, cannot be sued individually. . . . For purposes of this motion, the Court will construe all claims asserted against SFMTA to be asserted against CCSF"].)

authorized to enter into contracts and in fact had purchased a rotorcraft. (*Ibid.*) Additionally, L.A. Impact was expressly created as a "joint powers authority" under Government Code, section 6500 et seq. (*McKee*, at p. 357.) And "L.A. Impact only constitutes a public agency if it was formed under the Joint Exercise of Powers Act." (*McKee*, at p. 359; see Gov. Code, § 6500.)

Here, as discussed, the City Charter does not indicate an intention to create a separate entity, unlike the agreement in *McKee*. And contrary to plaintiff's assertion, SFMTA is not a "fiscally separate entity" from the City. We have already explained that the fact that SFMTA's funding is segregated from other City funds does not make it "fiscally separate" from the City. (See *Anaheim Sugar Co.*, *supra*, 181 Cal. p. 219.)

Nor does *Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195 (*Brassinga*), the case heavily relied on at oral argument, assist appellant. *Brassinga* addressed whether a regional special weapons and tactics (SWAT) team, composed of the SWAT teams of the Mountain View, Palo Alto, and Los Altos Police Departments, qualified as an " 'employer' " for workers' compensation purposes. (*Id.* at pp. 210–211.) In that case, Officer Brassinga, a Palo Alto reserve officer who was not a member of its SWAT team, was accidentally shot to death by Officer Acton, a Mountain View police officer who was a member of its SWAT team and of the regional team, during one of the regional team's training sessions. (*Id.* at pp. 205–207.) When Brassinga's heirs sued, Mountain View claimed Brassinga was either its own or the regional team's "special employee" and sought to limit the heirs' recovery to amounts payable under the Workers' Compensation Act. (*Id.* at pp. 208–209.) The Sixth District held that the regional team did not qualify as an " 'employer' " under Labor Code section 3300, which includes " '[e]ach county, city, district, and all public and quasi public corporations and public agencies

19

therein.' " (See *Brassinga* at pp. 211–213. The regional team was concededly not created as a public agency by virtue of any joint powers authority. (*Id.* at p. 211.) Also, the undisputed evidence showed that the regional team had no office, property, employees, letterhead, phone number, or any other indicia that it functioned as a " 'public agenc[y].' " (*Id.* at p. 213.) Thus, the Sixth District held the regional team was not an employer of anyone within the meaning of Labor Code section 3300. (*Brassinga* at p. 213.)

Appellant argues that unlike in *Brassinga*, the record here contains (or could potentially contain after conducting discovery) indicia that SFMTA and SFFD each functions as a " 'public agenc[y]' " and thus as an " 'employer' " for workers' compensation purposes. However, these purported factual distinctions between this case and *Brassinga* do not undermine our analysis above, because *Brassinga* does not address the precise issue before us, which is whether a municipal department exists independently from the municipality from which it derives.

This leads us to *Walker* and *Colombo*, which the trial court relied upon to conclude that workers' compensation is appellant's exclusive remedy. As respondents observe, "[c]onsistent with the principle that a municipal department does not exist independent of the municipality," this court in *Walker* "has already determined that . . . firefighters and transit workers are City employees for workers' compensation purposes." And in *Colombo*, another appellate court followed the reasoning in *Walker* to conclude that the State of California, not its departments, is, as a matter of law, the relevant employer for workers' compensation purposes.

As summarized in *Colombo*, *supra*, 3 Cal.App.4th at page 599: "In *Walker*, a firefighter was killed when his fire truck collided with a streetcar operated by a municipal streetcar employee. Both the firefighter and the

20

streetcar employee were employed by the City and County of San Francisco. The decedent's widow and daughters brought a negligence action against the city and county. On appeal from a judgment on the pleadings, they claimed that workers' compensation was not the exclusive remedy because the municipal railway was operated by San Francisco in its proprietary capacity, while fire protection is a governmental function. ([*Walker*, *supra*,] 97 Cal.App.2d at p. 902.) Thus, they suggested the case presented an analogy to a large, parent corporation which owns a smaller corporation, and argued that where an employee of the larger corporation is injured by an employee of the smaller company, the injured employee should not be relegated solely to workers' compensation simply because the smaller company is owned by the larger corporation. (*Id.*, at pp. 903–904.)

"The *Walker* court was unpersuaded, seeing a clear distinction between two separate corporate entities and a single governmental entity. ([*Walker*, *supra*,] 97 Cal.App.2d at pp. 904–908.) Noting that the City and County of San Francisco was the employer of both the decedent and the allegedly negligent streetcar operator, the court concluded that workers' compensation was the sole remedy. (*Ibid.*)"

The court in *Colombo* followed *Walker* to hold the workers' compensation exclusivity rule barred the plaintiffs' claims against the State of California and its Department of Transportation (DOT). (*Colombo*, *supra*, 3 Cal.App.4th at pp. 599–600.) In *Colombo*, a California Highway Patrol (CHP) traffic officer was struck by a car traveling on the highway while he was on duty. (*Id.* at p. 595.) The officer filed a personal injury action against the State of California and DOT, alleging DOT was negligent. (*Id.* at p. 596.) The officer's spouse also asserted a claim for loss of consortium. (*Ibid.*) The trial court sustained the demurrer of DOT and State of California to the

21

operative complaint without leave to amend, on the grounds that it lacked subject matter jurisdiction because workers' compensation was the plaintiffs' exclusive remedy against the officer's employer, the State of California, an entity which encompasses both the CHP and DOT.  (*Ibid.*)

As in *Walker*, the plaintiffs on appeal attempted to draw an analogy between the State of California, with its DOT and CHP, and a multiunit corporate enterprise.  (*Colombo, supra*, 3 Cal.App.4th at p. 598.)  Relying on *Gigax v. Ralston Purina Co.* (1982) 136 Cal.App.3d 591 (*Gigax*), a case also cited by appellant here, the plaintiffs argued that the CHP and DOT are separate entities within state government, each with distinct responsibilities.  (*Colombo*, at p. 598.)  The *Colombo* court disagreed, concluding that "[a]s part of the Business, Transportation and Housing Agency of state government [citation], both departments and their employees are agents of the state. [Citation.]  Hence, lawsuits against state agencies are in effect suits against the state. [Citations.]" (*Ibid.*)  And the court held:  "Plaintiff Russell Colombo was an employee of the State of California, as were the DOT employees whose alleged negligence purportedly caused his injuries.  Because the state was his employer, Officer Colombo was precluded from bringing an action at law against the State, via its DOT. [Citations.]  Since workers' compensation is the exclusive remedy, the trial court properly sustained the state's demurrer without leave to amend." (*Id.* at p. 599.)  And because the officer's action was barred, so too was his spouse's claim.  (*Ibid.*)

Applying the reasoning of *Walker* and *Colombo* here compels the conclusion that because SFFD and SFMTA are merely parts of the same entity, the City, it is the City that effectively employs both appellant and Yu. It follows that workers' compensation provides the exclusive remedy for appellant's claims against the City as his employer (§§ 3600, subd. (a),

22

3602, subd. (a)), and against Yu as his coemployee (§ 3601, subd. (a)). To the extent appellant attempts to draw an analogy between SFMTA and SFFD and two separate business entities within a multiunit corporate enterprise, such an analogy was rejected in *Walker* and *Colombo*. (See *Walker*, *supra*, 97 Cal.App.2d at pp. 903–904; *Colombo*, *supra*, 3 Cal.App.4th at p. 598.) And we reject it here.

Appellant's attempts to show that *Walker* and *Colombo* are inapplicable are unavailing. He first contends they are not controlling because they were decided before the creation of SFMTA in 1999, and thus " 'are not authority for propositions not considered.' " But even though *Walker* and *Colombo* did not involve the same public entities as in this case (with *Walker* in particular involving SFMTA's predecessor, the Municipal Railway), appellant offers no persuasive reason why they should be limited to the public agencies at issue in those cases. To the contrary, we find the cases' reasoning persuasive and conclude they supply the appropriate rule for this case.[7]

Appellant next attempts to factually distinguish *Walker* and *Colombo*. He argues that "SFMTA operates largely, if not wholly, independently of the various departments within the City and County of San Francisco, including the San Francisco Fire Department. There was no similar degree of

---

[7] *Walker* is consistent with cases from other jurisdictions, as indicated in *Walker* itself, as well as in a treatise on workers' compensation law, which sets forth the law this way: "Attempts have several times been made to subdivide [an employer, such] as a municipality, and assert common-law rights on behalf of an employee of one city department against a different city department as if it were a stranger. These attempts have been consistently unsuccessful." (1 Larson's Workers' Compensation Law (2023), § 113.05 [citing *Walker*, *supra*, 97 Cal.App.2d 901; *Holody v. City of Detroit* (1982) 117 Mich.App. 76 [323 N.W.2d 599]; *Spencer v. City of Seattle* (1985) 104 Wn.2d 30 [700 P.2d 742]; and *Osborne v. Commonwealth* (Ky. 1962) 353 S.W.2d 373].)

23

separation between the CHP and Caltrans in *Colombo* and the Fire Department and the Municipal Railway (SFMTA's predecessor) in *Walker*." He goes on, "the Fire Department and the Municipal Transportation Agency are 'governed by different [provisions of the San Francisco Charter] and have different organizations, powers, and duties.' " This argument is unpersuasive. The holdings of those cases did not hinge on the "degree of separation" between the two entities at issue in each case. It was acknowledged that the agencies (the Municipal Railway and fire department in *Walker* and DOT and CHP in *Colombo*) were different from each other in the obvious sense that they were different departments within their respective City or State government performing different functions. But as explained in *Colombo*, the fact that two agencies perform different functions does not negate that they remain a part of the same entity. (See *Colombo*, *supra*, 3 Cal.App.4th at p. 598.)

Appellant further contends that *Walker* and *Colombo* are either wrongly decided or no longer viable because they predated the decisions of *People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060 (*Lockyer*) and *Greyhound Lines, Inc. v. Dept. of Cal. Highway Patrol* (2013) 213 Cal.App.4th 1129 (*Greyhound*). The cases are distinguishable.

*Lockyer* involved a discovery dispute. The court held that "to obtain documents and witnesses" from non-party state agencies, the defendant had to "serve subpoenas directly upon" those agencies, rather than the State of California (the People). (*Lockyer*, *supra*, 122 Cal.App.4th at p. 1080.) The court recognized that the non-party state agencies were distinct entities for purposes of discovery requests, noting among other things that each agency was responsible for maintaining its own records. (*Id.* at p. 1079.) The court added, "It would be unduly burdensome if any time the People are a party to

24

litigation they are required to search for documents from any and all state agencies that the propounding party demands." (*Ibid*.) Contrary to appellant's suggestion, we do not read *Lockyer* as standing for the broad proposition that various state or municipal entities must be treated as distinct entities for all purposes, much less for purposes of the workers' compensation laws.

*Greyhound* relied on *Lockyer* to conclude that two state agencies were separate parties for purposes of determining whether the judgment was appealable under the one final judgment rule. (*Greyhound, supra,* 213 Cal.App.4th at pp. 1134–1135.) CHP and Caltrans were named as defendants. On appeal, CHP argued that the judgment dismissing it from the cross-complaint was not appealable because Caltrans was still a party to the action, and both CHP and Caltrans are departments of the State and therefore not separate entities for purposes of a judgment. (*Id.* at p. 1134.) The *Greyhound* court disagreed, finding that the parties were separate parties and therefore that the judgment dismissing CHP was appealable. (*Id.* at p. 1135.) The court also explained that allegations against the two departments were completely different and that they conducted themselves as separate parties, as each party was represented by its own counsel and filed a separate responsive pleading to the cross-complaint. (*Ibid*.)

Appellant asserts that *Greyhound*'s "recognition that departments or agencies of a public entity can be 'distinct and separate government entities' . . . extends logically to the workers' compensation context." *Greyhound* addressed an appealability issue, and it is well settled that the statutory " ' "right to appeal is remedial and in doubtful cases should be resolved in favor of the right whenever the substantial interests of a party are affected by a judgment." ' " (*In re S.B.* (2009) 46 Cal.4th 529, 537; *County*

25

*of Humboldt v. Appellate Division of Superior Court* (2020) 46 Cal.App.5th 298, 310.) The *Greyhound* court treated CHP as a party distinct from Caltrans and permitted CHP to pursue its appeal, a determination that appears consistent with resolving any doubts in favor of the right to appeal.

Here, in contrast, we are dealing with the Workers' Compensation Act, which must be liberally construed in favor of awarding workers' compensation benefits. (§ 3202; *King v. CompPartners, Inc.*, *supra*, 5 Cal.5th at p. 1051.) Application of these principles cuts against concluding that SFMTA and SFFD are distinct entities, and therefore that Yu and appellant have separate employers. To do so would have the effect of circumventing the workers' compensation exclusivity rule, which prevents employees from bringing actions against fellow employees acting in the scope of employment, such that the fellow employees' negligence could be imputed to their employers. (*Torres, supra,* 26 Cal.4th at p. 1002.) Further, *Greyhound* is factually distinguishable. The complaint here does not contain "completely different" allegations as to the City and Yu, the allegations directed at both defendants the same. Also, unlike the two state agencies in *Greyhound*, the City and Yu have not conducted themselves as separate parties. To the contrary, they are represented by the same counsel and together filed the underlying demurrer.

For these and additional reasons, we reject appellant's argument that "Nor Can It Be Said That as a Matter of Law, [Appellant] Is Employed by the City and County of San Francisco." In support of this argument, appellant relies on the "right to control" test used to determine an employer relationship. Citing *Gigax*, *supra*, 136 Cal.App.3d at pages 598 to 601 and similar cases, appellant argues that the test specifically refers to the "'right to control the manner and means of accomplishing the desired result.'"

26

Appellant argues that "to be considered [his] employer, the City . . . must have the right to control the *details* of his work as a firefighter," and here, there are no allegations or matter subject to judicial notice that the City, as opposed to SFFD, had the right to control the details of his work. Thus, appellant contends that the issue cannot be resolved at this procedural juncture, before discovery has taken place, as a matter of law. We are unpersuaded.

Initially, to the extent appellant argues the trial court erred in sustaining the demurrer without leave to amend, he bears the burden of demonstrating how the complaint can be amended to support his theory (*Goodman*, *supra*, 18 Cal.3d at p. 349)—a burden he has not met. As respondents aptly put it, "[b]esides vaguely arguing that discovery might support his separate-employer theory . . . , Appellant fails to identify anything he could add to his pleadings that would negate the workers' compensation exclusivity rule. . . . Appellant, therefore, has not satisfied his burden of proving a 'reasonable possibility' that he can cure his defective Complaint through amendment." As such, appellant cannot show the court abused its discretion in sustaining the demurrer without leave to amend. (*Ibid.*)

In any event, appellant's theory that SFFD, not the City, is his employer is untenable. It rests on the premise that SFFD exists as an entity separate and apart from the City, a premise that appellant did not attempt to establish, and we have rejected in any case. Accordingly, it is the City that in substance employs appellant, and appellant's attempt to divide the City and SFFD into separate entities for purposes of the workers' compensation exclusivity rule fails.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

_____
Richman, Acting P. J.

We concur:


_____
Miller, J.


_____
Markman, J. *




*Vann v. City and County of San Francisco* (A165231)

     *Superior Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


29

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Richard B. Ulmer; |
| Attorneys for Plaintiff and Appellant Matthew Vann: | Abbey, Weitzenberg, Warren & Emery, P.C., Scott R. Montgomery; Law Offices of Tiffany J. Gates, Tiffany J. Gates; |
| Attorneys for Defendants and Respondents, City and County of San Francisco, et al.: | David Chiu, City Attorney; Meredith B. Osborn, Chief Trial Deputy; Katherine B. Bearman, Deputy City Attorney. |